DURELL, APPELLANT, *v.* BROWN, APPELLEE.

[Cite as Durell v. Brown (1972), 29 Ohio App. 2d 133.]

(No. 71-140—Decided October 19, 1971.)

*Messrs. Dargusch & Day,* for appellant.

*Mr. William J. Brown,* attorney general, *Mr. Julius J. Nemeth* and *Miss Winifred A. Dunton,* for appellee.

*Messrs. Clayman, Jaffy & Taylor,* for intervening defendant-appellee.

STRAUSBAUGH, J. This appeal is from an order of the Common Pleas Court wherein plaintiff was denied a request for a permanent injunction. The action involves an initiative petition which was filed under Section 1b, Article II of the Constitution by a group of individuals known as the Tax Reform Action Committee (hereinafter called Committee). The initiative petition was tendered to the Secretary of State and consisted of a number of part-petitions which proposed substantial state tax reform for consideration by the General Assembly of Ohio.

The plaintiff filed his complaint in an attempt to prohibit the Secretary of State from further processing the initiative petition, and prayed for a temporary and permanent injunction as well as a declaratory judgment. The

Committee was permitted to intervene as a party defendant. The judgment is modified and affirmed.

Certain facts have been stipulated orally and in writing. The parties agree, by oral stipulation, that the minimum number of signatures necessary (equaling three percent of the electors) to a consideration of the petition is 95,526.

Pertinent parts of the written stipulation include the following:

1. That the plaintiff, Britton Durell, is a resident, citizen, taxpayer and qualified elector in and of the county of Franklin and the State of Ohio;

2. That on December 24, 1970, an initiative petition was tendered to the Secretary of State of Ohio for filing and such was composed of numerous part-petitions;

3. That of the purported signatures which were received by and included within the count of purported signatures by the Secretary of State, a total of 2100 signatures appeared on part-petitions bearing the signatures of electors of more than one county, from which total 91 signatures were by electors of a county other than the one from which a greater number appeared on a given part-petition;

4. That of the purported signatures which were received by and included within the count of purported signatures by the Secretary of State, 1592 signatures appeared on part-petitions where the consideration clause was not filled out before signatures of purported electors were affixed thereto;

5. That of the purported signatures which were received by and included within the count of purported signatures by the Secretary of State, 310 signatures appeared on part-petitions where no portion of the affidavit form was filled out and which contained no other affidavit;

6. That of the purported signatures which were received by and included within the count of purported signatures by the Secretary of State, 289 signatures appeared on part-petitions where, with respect to the verification, the date line alone, at most, was filled out;

7. That of the purported signatures which were re-

ceived by and included within the count of purported signatures by the Secretary of State, there were at least 5000 signatures appearing on part-petitions from which the "Committee for Petitioners" struck the signatures of at least 500 electors who were not residents of the county in which the respective part-petitions of the initiative petition were circulated, and which were stricken by said Committee without direction of any elector whose signature was stricken, or of the solicitors of the part-petitions from which the electors' signatures were so stricken.

It was also an undisputed fact that, of the purported signatures which were received and counted by the Secretory of State, 539 signatures appeared on part-petitions issued by the Secretary of State to a specified solicitor, but returned with the name in the affidavit of someone other than the named solicitor.

Further, it was not disputed that at the time the part-petitions were tendered, the Committee presented to the Secretary of State a tally sheet setting forth the total number of claimed signatures appearing on the part-petitions, the counties in which those signatures were solicited and separate totals for each county. That total number of claimed signatures was 97,732. After receiving the part-petitions which the Committee had tendered, the Secretary of State, through his election section, proceeded to determine the purported number of signatures which were felt, in fact, to have been tendered. After making certain deductions of numbers of signatures for part-petitions listed but not tendered, making deductions for certain invalid part-petitions, adding more numbers of signatures where there was a determination that there were more names on the part-petition than were listed on the tally sheet, and making adjustments for mathematical errors, the Secretary of State concluded that approximately 96,652 signatures had been tendered to him by the Committee. No deduction was made for those signatures referred to in the written stipulation. Thereupon, the Secretary of State transmitted most of the several thousand part-petitions to the respective boards of elections for analysis, retain-

ing some part-petitions wherein it was determined that the circulator, or affiant, was not the person to whom the petition was registered or issued.

Certain other part-petitions had been reissued by the Secretary of State to affiants whose signatures appeared on the part-petitions, but who were not the solicitors initially registered with the Secretary of State. Whether these part-petitions were transmitted to the appropriate boards of elections for analysis is not clear from the record.

Finally, an additional 2545 signatures appearing on part-petitions were determined by the Secretary of State to be invalid for "one reason or another," and these part-petitions were not forwarded to the respective county boards of elections, but were included within the total of 96,652 signatures computed by the Secretary of State to be that number tendered by the Committee.

The trial judge in the court below summarized his findings as follows:

"1. Required Signatures—3% of the votes cast for Governor at the last election therefor (oral stipulation)     95,526

"2. Total number of signatures 'claimed' by committee at time of presenting part-petitions     97,732

"3. Total number of signatures counted by Secretary of State     96,652

"4. Signatures with no affidavit     599

"5. Signatures 'crossed-out' (at least 500)     500

"6. Solicited by other than listed solicitor—subject to later proof of insufficiency     539

"7. More than one county—subject to later proof of insufficiency     91

"8. No consideration clause—subject to later proof of insufficiency     1592

Deductions     1,099     1,099

"Signatures presumed to be sufficient     95,553

"Excess over Required Signatures     27"

The plaintiff makes three assignments of error:

1. "The trial court committed prejudicial error by holding that applicable law permitted the Secretary of State to receive for 'filing' part-petitions circulated by someone other than the registered solicitor.

2. "The trial court committed prejudicial error by holding that applicable law permitted the Secretary of State to receive as filed part-petitions containing the signatures of electors of more than one county.

3. "The trial court committed prejudicial error by holding that applicable law permitted the Secretary of State to receive as filed part-petitions upon which the solicitor did not declare the consideration, if any, which he received or was to receive, the source thereof, or the lack of consideration, if none was to be received."

Fundamental to a determination of the issues in this matter is an examination of the duties of the Secretary of State upon the receipt of an initiative petition. These duties are prescribed in provisions of both the Constitution and the statutes enacted pursuant thereto. A pertinent portion of Section 1b, Article II of the Constitution is as follows:

"When at any time, not less than ten days prior to the commencement of any session of the general assembly, there shall have been filed with the secretary of state a petition signed by three per centum of the electors and verified as herein provided, proposing a law, the full text of which shall have been set forth in such petition, the secretary of state shall transmit the same to the general assembly as soon as it convenes. If said proposed law shall be passed by the general assembly, either as petitioned for or in an amended form, it shall be subject to the referendum. If it shall not be passed, or if it shall be passed in an amended form, or if no action shall be taken thereon within four months from the time it is received by the general assembly, it shall be submitted by the secretary of state to the electors for their approval or rejection at the next regular or general election, if such submission shall be demanded by supplementary petition verified as herein provided and signed by not less than three per centum of

the electors in addition to those signing the original petition, which supplementary petition must be signed and filed with the secretary of state within ninety days after the proposed law shall have been rejected by the general assembly or after the expiration of such term of four months, if no action has been taken thereon, or after the law as passed by the general assembly shall have been filed by the governor in the office of the secretary of state. The proposed law shall be submitted in the form demanded by such supplementary petition, which form shall be either as first petitioned for or with any amendment or amendments which may have been incorporated therein by either branch or by both branches, of the general assembly. If a proposed law so submitted is approved by a majority of the electors voting thereon, it shall be the law and shall go into effect as herein provided in lieu of any amended form of said law which may have been passed by the general assembly, and such amended law passed by the general assembly shall not go into effect until and unless the law proposed by supplementary petition shall have been rejected by the electors. * * *''

Article II, Section 1g, provides among other things: ''* * * The petition and signatures upon such petition, so verified, shall be presumed to be in all respects sufficient, unless not later than forty days before the election, it shall be otherwise proved and in such event ten additional days shall be allowed for the filing of additional signatures to such petition. * * *''

Under Section 1b, Article II, *supra*, upon the filing, by the committee, of petitions containing a sufficient number of presumptively valid signatures under Section 1g, Article II, *supra*, it was the duty of the Secretary of State to determine whether a sufficient number of presumptively valid signatures had been filed, and if it be determined by the Secretary of State that a sufficient number had been filed, it was then his duty to certify such petitions containing the signatures to the General Assembly. The record before us indicates that the Secretary of State made no such official determination of the presumptively valid signatures

submitted to him. Furthermore, the record does not show whether there was in fact a sufficient number of presumptively valid signatures submitted to the Secretary of State.

Since the burden of proof is upon the plaintiff to prove an insufficiency of valid signatures submitted to the Secretary of State, and he has not satisfied such burden, the plaintiff has failed to prove his case.

In 1929, the General Assembly enacted G. C. Sections 4785-1 through 4785-234. In these enactments, they defined the duties of the Secretary of State as chief election officer, under Section 4785-7, and certain duties of the county boards of elections, under Section 4785-178. The former section, in part, provided:

"It shall be the duty of the secretary of state * * * to receive and to determine the sufficiency of all initiative and referendum petitions on state questions and issues as hereinafter provided, and to certify to the sufficiency of such petitions * * *."

On the other hand, the boards of elections were given authority under Section 4785.178, after receiving initiative or referendum petitions, to "* * * proceed at once to ascertain whether or not * * * names [on the petitions] are on the registration list of a registration city, or on the polling lists of such county, or are eligible to vote in such county, and to determine any repetition or duplication of signatures, the number of illegal signatures and the omission of any necessary details required by law."

On October 4, 1939, the Supreme Court in *State, ex rel. Herbert,* v. *Mitchell,* 136 Ohio St. 1, held that the Secretary of State could reject those parts of a petition where the signatures were not verified as provided in the Constitution, but that "in other respects the signatures on the petition are presumed to be sufficient unless proven otherwise according to the procedure outlined in the statutes."

Although Section 1b, Article II of the Constitution prescribes that "the secretary of state shall transmit the same [petition] to the general assembly as soon as it convenes," nothing was put in issue concerning the transmit-

ting of the petition to the General Assembly. The part-petitions were tendered to the Secretary of State on December 24, 1970. At some indefinite period thereafter, it was determined by the Secretary of State that there were "an adequate number of signatures to meet the minimum requirement of the law." This apparently referred to the total number of signatures including those presumptively valid and those not presumptively valid; for example, in the latter instance, those contained on a part-petition not having an affidavit of the circulator. Subsequent thereto, he testified: "* * * We bundled the petitions together and sent them to the Boards of Elections, excluding certain petitions when we had gone through and found to be insufficient and therefore should not be forwarded to the Boards." Nowhere is it clear, from the record or the briefs of either party, on what date the determination was made to accept for filing that minimum number of signatures which is required by law. Whether the proposed legislation in the instant case has ever been transmitted by the Secretary of State to the General Assembly is not clear from the record. Judicial notice of the House of Representatives Journal of April 29, 1971, is taken where it reveals the fact that certain petitions were transmitted on April 28, 1971, from the Secretary of State to the office of the legislative clerk "for a proposed law containing, according to his [Secretary of State's] transmittal, 100,607 signatures, which exceeds the minimum requirement and which warrants the filing of said proposed law with the General Assembly." The bill was introduced as follows: "H. B. 976—Initiative Petition—Proposed Law." From this journal it may be presumed that this particular bill represents the proposed law sought under the subject initiative petition; however, there is no evidence to this effect.

The provisions of Section 1g, Article II of the Constitution, relating to the subsequent determination of the validity of signatures and the additional filing of signatures and the statutes relating to review by the boards of elections cannot possibly apply to the initial initiative petition before it is sent to the General Assembly by the Secretary

of State because of the impossibility (under the ten-day limitation found in Section 1b, Article II) of going through these steps before the initiative petition is transmitted to the General Assembly by the Secretary of State; and for the further reason that Section 1g, Article II refers to the making of the determination and requires such within 40 days of the election—obviously a time subsequent to the time that the initiative petition has been transmitted to the General Assembly.

We conclude that if there are sufficient presumptively valid signatures filed with the Secretary of State in an initiative petition meeting the constitutional requirements set forth above, there is an absolute duty on the Secretary of State to certify the petition to the General Assembly irrespective of whether it can be proved that in some way some or all of the signatures contained in the initiative petition are invalid. A later determination that the petition is insufficient in law can have an effect only on the holding of an election and not upon the certification or consideration that is given to it by the General Assembly. The issue of whether the Secretary of State was correct in certifying that which was certified to the General Assembly in April 1971 is not before this court. The further question of whether or not an election can be held, assuming supplementary petitions have been filed, is also not before this court. The request for a temporary injunction cannot be granted based upon the record in this case. The plaintiff has not met his burden of proof by showing clear and convincing evidence that there was, on December 24, 1970, an insufficient number of signatures submitted to the Secretary of State.

The judgment of the trial court denying plaintiff's request for a permanent injunction is affirmed, and the judgment granting a declaratory judgment is modified in accordance with this decision and as so modified is affirmed.

*Judgment modified and affirmed.*

TROOP, P. J., and REILLY, J., concur.