I respectfully dissent from the decision of the majority., Defendant-Appellant was convicted of violating R.C. 2921.31(A), which provides:
 "No person without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."
Ohio law enforcement officers, including deputy sheriffs, are authorized by R.C. 2935.03(A) to arrest and detain a person found violating the law of the state of Ohio within the political subdivision in which the officer is appointed. That authority necessarily comprehends a duty to investigate alleged violations of law.
Deputy Fritz was dispatched to investigate a complaint of underage consumption of alcohol. She was therefore engaged in her lawful duties when she went to the location concerned, where she encountered the Defendant sitting outside. Deputy Fritz ordered him to remain where he was, and she then went inside to investigate further. She learned from minors inside that Defendant had given them the beer they'd consumed. She then went back out to confront the Defendant, but he was gone.
When Defendant-appellant left the scene after Deputy Fritz ordered him to remain there, and subsequently ran off when she ordered him to stop, his conduct hampered or impeded the deputy's performance of her lawful duties. His purpose to prevent, obstruct, or delay her performance of those duties may readily be inferred.
Judge Wolff suggests that Defendant's conduct does not constitute a violation of R.C. 2921.31(A) because "the only inconvenience to Deputy Fritz and the sheriff's office was the additional time and effort expended in serving Richards with a citation (after locating him the following day) over what it would have been if she could have issued the citation at the scene." (Opinion, p. 6). However, and by its express terms, R.C. 2921.31(A) prohibits conduct performed with a purpose to "delay" the officer's performance of an official duty, and that clearly happened here. A de minimus delay of only a few minutes may not present a violation, but the delay of several hours in this instance, until Defendant could be found, was neither de minimus nor a minor inconvenience.
The real issue is whether Defendant was privileged to act as he did. R.C. 2921.31(A) exempts acts of obstruction when a subject is privileged by law to engage in the conduct involved. I believe that Defendant was not, at least when he ran away after Deputy Fritz saw him return to the scene again ordered him to stop.
The issue of privilege became confused in the trial court over the question of probable cause. Deputy Fritz would have been required to have probable cause to arrest Defendant, or even to cite him. However, she was not restricted to those purposes when she ordered him to stop after he had returned to the scene. The encounter was a classic Terry
stop, for which the deputy was required to possess no more than a reasonable and articulable suspicion that Defendant was involved in criminal activity. Terry v. Ohio (1968), 392 U.S. 1, 20 L.Ed.2d 889,88 S.Ct. 1868. Deputy Fritz possessed a suspicion of that kind after the young people inside the house told her that Defendant had provided them beer. She was then authorized by law to detain him in the process of investigating those suspicions.
The majority rejects this proposition, relying on State v. Gillenwater
(April 2, 1998), Highland App. No. 97CA0935, unreported. In that case, the Fourth District Court of appeals stated: "We do not believe that mere flight from a request for a Terry stop constitutes a violation of the obstructing official business statute." Id., at p. 4. The Gillenwater
court appears to have reasoned that the Fourth Amendment protections which Terry confers somehow create a privilege to walk away from a Terry
stop. In my view, that misconstrues the nature of the Fourth Amendment protections and their application in a Terry setting.
The Fourth Amendment is not a positive grant of authority. It is instead a prophylactic measure that prevents a law enforcement officer who performs an official duty from engaging in an unreasonable search and seizure in the process. In that event, the subject of the officer's unreasonable (and illegal) acts is privileged to decline cooperation. The privilege even permits the subject of an illegal stop to turn and walk away without thereby violating the obstructing official business statue, R.C. 2921.31(A). However, that when a valid Terry stop does occur a subject is not likewise privileged to walk away. Being a valid stop, the Fourth Amendment is satisfied, and its prohibitions do not then impinge on the officer's exercise of his or her lawful authority in performing the stop so as to permit the suspect to walk away.
When a valid Terry stop takes place, having been seized by an officer exercising his or her lawful authority, a subject who breaks the detention and flees for the purpose of obstructing or delaying the officer's performance of those duties violates R.C. 2921.31(A). The subject is not privileged to engage in such conduct. The Gillenwater
court appears to have concluded that a privilege exists because the subject is free to walk away. However, that's merely the test applied to determine whether or not a seizure occurs. See United States v.Mendenhall (1980), 446 U.S. 544, 100 S.Ct. 1270, 64 L.Ed.2d 497. The privilege it suggests exists only when no seizure has occurred. When a valid seizure does occur, the privilege doesn't apply.
A reading of Gillenwater, supra, reveals why that court found that a privilege to walk away existed. That was because, notwithstanding its pronouncements, Gillenwater didn't involve a Terry stop.
In Gillenwater, supra, an officer was outside an apartment complex looking to find one Donald Streitenberger, who had allegedly threatened several persons, including Gillenwater. When the officer looked behind a dumpster he found Gillenwater crouched there. The officer ordered Gillenwater to come out and sit on the ground. Concerned that Gillenwater might run off, the officer reached to touch him, whereupon Gillenwater ran off. He was subsequently located and charged with obstructing official business, and was convicted. His conviction was reversed by the appellate court, which held that an R.C.2921.31(A) violation is not demonstrated by a flight from a Terry stop.
In my view the outcome in Gillenwater was correct, but the case was wrongly decided for the reason on which the Fourth District relied. The defendant, Gillenwater, was only a possible victim of the offense the officer was investigating, not the suspect who was alleged to have committed it. That was Streitenberger. The officer was surely authorized to interview Gillenwater. However, he was prevented by Terry
from seizing Gillenwater because Gillenwater was not suspected of committing any crime. Asking Gillenwater to remain may have been a prudent and sensible thing to do, but Gillenwater was privileged to ignore that request and run off, not being the subject of any seizure the officer was authorized by law to perform.
The Gillenwater court relied on several other Ohio cases in reaching its decision. Those cases, likewise, fail to portray an officer's exercise of some lawful authority that the defendant's conduct obstructed. See: Warrensville Hts. v. Watson (1976), 50 Ohio App.2d 21
(warning oncoming vehicles of a radar speed trap); Hamilton v. Hamm
(1986), 33 Ohio App.3d 175 (refusal to sign an agreement to pay a fine);Columbus v. Michael (1978), 55 Ohio App.2d 46 (refusing to comply with an officer's warrantless request to open a door).
One case the Gillenwater court cited which did involve an actual Terry
stop is State v. McCullogh (1990), 61 Ohio Misc. 607. However, the court there did not explain why flight from a Terry stop is insufficient to support an obstructing official business conviction, except to suggest to do that would permit arrests on a mere Terry standard. That view ignores the fact that the suspect's flight is conduct subsequent to and independent of the particular suspicion on which the Terry stop was founded. The state's burden to prove that additional conduct, such as flight, avoids the concern the court expressed.
The application of the Fourth Amendment adopted by the Gillenwater
court, and by the majority here, views the Fourth Amendment as the source of an officer's authority to perform a stop. It isn't. Some relevant statute, R.C. 2935.03(A) in this instance, confers the authority. The Fourth Amendment simply restrains its exercise. When its restraint applies, for lack of a reasonable and articulable suspicion in a purportedTerry stop, for example, a person who exercises the liberty interest that the Fourth Amendment preserves has not obstructed the officer's performance of his duty, because the subject is privileged to act as he does. However, absent the privilege, when the Terry stop is authorized by a reasonable and articulable suspicion, the conduct may constitute obstruction.
It may seem to some to be a questionable extension of the Terry rule to hold that a suspect who flees from a valid Terry stop thereby violates the obstructing official business statute. I believe that it's not questionable, but only a novel question. Nevertheless, it is sound and rational. Terry confers no privilege on a suspect who is validly detained to break his detention. Had Terry himself broken from Officer McFadden's grasp and fled down Euclid Avenue on that day in late October of 1963, Terry would also have violated the obstructing official business statute. There's no reason to hold otherwise here with respect to Defendant's flight from Deputy Fritz when she told him to stop. I would affirm.