CITY OF WARRENSVILLE HTS., APPELLEE, *v.* WASON,
APPELLANT.

[Cite as Warrensville Hts. v. Wason (1976),
50 Ohio App. 2d 21.]

(No. 35190—Decided November 24, 1976.)

Mr. *Howard S. Stern,* for appellee.
Mr. *Lawrence J. Friedman,* for appellant.

DAY, J. Defendant-appellant Wallace B. Wason (defendant) was convicted of interfering with a police officer in performance of his duties in Warrensville Heights under an ordinance of that municipality. The ordinance provides:

"No person shall resist, hinder, obstruct or abuse any official while such official is attempting to arrest offenders under this Traffic Code. No person shall interfere with any person charged under such sections with the enforcement of the law relative to public streets." Section 303.03, Codified Ordinances of Traffic of Warrensville Heights.

The gist of the alleged offense was that defendant,

driving northbound on Dalebridge Road in Warrensville Heights, flashed his headlights at oncoming automobiles to warn them that they were approaching a radar speed trap. There was testimony that traffic slowed after the warning but the record indicates that none of the warned vehicles had been speeding before the warning, and none were exceeding the speed limit as they passed the radar. The lone state witness, a police officer, answered "probably not" to the question whether defendant was doing "anything to interfere or slow down your only duty of being there that day? [sic]." The officer also said he was not attempting to arrest anyone when he approached the defendant other than the defendant himself. Defendant's action occurred about twenty minutes after he had been clocked and cited for speeding southbound on Dalebridge Road. Defendant expressed some annoyance with the police for devoting their energies to traffic violations rather than more serious crimes. These events occurred on April 25, 1975, shortly after 6:30 p. m. (or 7:30 p. m.).

Defendant claimed he was testing his headlights although he conceded they were not necessary for visibility. Defendant appealed assigning two errors which are set out in the margin.[1]

Because the assignments raise essentially a single issue, they are treated together. That issue becomes, based on the facts in this case and giving those facts an interpretation most favorable to the city, was defendant guilty of obstruction?

---

[1]Assignment of Error No. 1: "The trial court erred by finding Defendant-Appellant guilty of violating §303.03 of the Codified Ordinances of Traffic of the City of Warrensville Heights, Ohio, which Ordinance pertains to the misdemeanor of obstructing or interfering with a police officer while making an arrest or in the performance of his duties."

Assignment of Error No. 2: "The trial court erred by finding that Defendant-Appellant obstructed a police officer in the performance of his duties because such a finding is against the manifest weight of the evidence." ·

The trial court was Bedford Municipal Court which has jurisdiction in Warrensville Heights, Ohio, R. C. 1901.02.

We reverse.

## I.

Our perception of the issue in this case begins with the propositions that defendant was neither assisting the police in the performance of their duties, nor testing his lights when he behaved as he did. Such excuses are too specious to warrant further comment. Our view of the case also proceeds on the assumption that illegal interference or obstruction can be established without actual physical hinderance.[2]

## II.

Relatively few reported decisions have addressed the issue in this case.[3] Three reported decisions do point the way toward resolution.

In *Bastable* v. *Little* (1906), 76 K. B. 77, police officers had marked off several furlongs with spaces between in order to gauge the speed of motor cars passing over the measured distances. The respondent used hand signals, augmented by a newspaper, and verbal warnings of the "police trap" to notify motorists of the police activity. He was convicted of obstruction. The court reversed the conviction relying heavily upon the absence of evidence either that (1) the motorists were actually breaking the law at the time of respondent's action, or (2) that he was acting in concert with them. His knowledge that there was a police trap was apparently not enough,[4] although this certainly evidences intent.

In a second case, *Betts* v. *Stevens* (1909), 79 K. B. 17, officers again were timing to detect automobile speeders. This activity was monitored by appellant Betts in his ca-

---

[2] No "abuse" is involved and it is evident that the words "resist, hinder [or] obstruct" and "interference" in the ordinance are draftsmen's synonyms intended to cover the various nuances implicit in the concept that a police officer does not have to put up with citizen impediments to the performance of his duties. The words are used interchangeably in this opinion. See footnote 14 in *Note-Types of Activity Encompassed By the Offense of Obstructing A Public Officer*, 108 U. Penn. L. Rev. 388, 389 (hereafter "Note").

[3] See footnote 71, "Note," *supra.*

[4] *Bastable* v. *Little, id.* at 80.

pacity as a "sergeant" of patrols for the Automobile Association. Betts undertook to signal a slowdown to automobiles. Some of these were marked with "A. A." insignia indicating membership in the association and apparently all slowed enough to come within the speed limit. When the police proceeded to two additional locations in sequence and set up to time speeders, the appellant went along and renewed his activity. On these occasions he warned persons who were *exceeding* the limit.[5] He was convicted of obstruction. The conviction was affirmed. The Justices distinguished *Bastable* v. *Little* on the ground that in that case there was no evidence of unlawful speed at the time of the warning.[6] Apparently, neither the *Bastable* nor *Betts* court had any problem with the evidence of intent. It is clear, then, that the rationale of the cases depended upon two elements: (1) an intent to warn a third person of the police presence, (2) to prevent detection of an illegal act.

Research has disclosed only one Ohio printed report of a case whose facts approximate those in the present one. In that case, *Akron* v. *Matteson* (1972), 63 Ohio Op. 2d 146, 148, the court acquitted the defendant. He was charged under a state statute[7] couched in language substantially identical with that of the Warrensville Heights ordinance. The court in *Matteson* at 147-148, aware of *Bastable* and *Betts*, reasoned that because there was no evidence of speeders "in or about the area when defendant flashed her lights," a rhetorical question had to be answered. That question was:

"* * * Can we say that these radar officers were 'attempting to arrest offenders' or that some other duties of theirs were affected?"

The acquittal provided a positive "No."

---

[5]*Betts* v. *Stevens, id.* at 18-19.

[6]*Betts* v. *Stevens, id.* at 22-23.

[7]R. C. 4511.78 (Repealed 1/1/74; see R. C. 2921.31 and 2921.33).

"No person shall resist, hinder, obstruct, or abuse any sheriff, constable, or other official while such official is attempting to arrest offenders under sections 4511.01 to 4511.76, inclusive, of the Revised Code. No person shall interfere with any person charged under such sections with the enforcement of the law relative to public highways."

### III.

An essential condition to quicken the obligation of policemen to enforce the law, whether it be a traffic violation or a more serious offense, is illegality. This does not mean that an officer must restrain himself until an illegal act has climaxed. For instance, he may detain a person flourishing a pistol without waiting for the gun to be fired. But the officer may not make a search for weapons simply because he suspects a person is armed unless and until the suspicion ripens into probable cause or, at least, until the circumstances justify a reasonable man in concluding that he must initiate search action for his own safety.[8]

It follows that one of the elements of obstruction is the presence of an illegal act which generates the policeman's duty to enforce the law. An additional element is interference with intent to impede the performance of. that duty. In the present case it is conceded that the defendant did not warn persons who were violating the law. The drivers whom he signalled were not shown to be speeding. The officer was not proceeding, did not intend to proceed and did not have a basis for proceeding, against the persons warned.[9] Though the intent to warn was clear, the warn-

---

[8]*Terry* v. *Ohio* (1968), 392 U. S. 1, 24, 27.

[9]"Q. Did the Defendant in front of you do anything to slow traffic? To interfere with your purpose?

"A. I don't know, that would be strictly my opinion.

"Q. Well, if your purpose in being there is to slow traffic, and you say that the Defendant being there, did he interfere with your purpose for being there? Did you have any reason for being there?

"A. Probably not.

"Q. Then you are saying that the Defendant did not do anything to interfere or slow down your only duty of being there on that day?

"A. Probably not, sir.

"Q. At the time you stopped the Defendant, were you attempting to arrest anyone?

"A. At the particular moment that I stopped him?

"Q. For the traffic, speed, or red lights, which violation?

"A. Other than when?

"Q. Other then when you approached the Defendant, were you attempting to arrest anyone?

"A. No."

26

ing was not directed to persons whom the evidence revealed to have been either acting illegally or to have begun activity intended to culminate in illegality. Thus, only one of the two elements necessary to establish an offense was present and the offense was not proved.

*Judgment reversed.*

PARRINO, J., concurs in the judgment only.
STILLMAN, J., dissents.

PARRINO, J., concurring in the judgment only. On April 25, 1975, appellant (hereinafter referred to as defendant) was arrested for interfering with a police officer who was seeking to enforce the provisions of the Warrensville Heights Traffic Code. Defendant was charged under Section 303.03 of the Codified Ordinances of Traffic of Warrensville Heights. He was convicted of obstructing a police officer and was fined $50 and costs. He now appeals.

Prior to his arrest on the present charge, defendant had been issued a traffic ticket for speeding by the same police officer. At that time he stated to the police officer, "Why aren't you out catching criminals, and out doing things instead of catching people with radar." Defendant also inquired of the police officer as to where he was when defendant's car had been stolen.

The defendant left but the officer remained at his radar station. Shortly thereafter, defendant returned to the scene, positioned his car in front of the police car to face oncoming traffic, and flicked his headlights to oncoming cars, obviously warning them of the officer's presence. It was daylight. There is no evidence that defendant knew any of the drivers of the oncoming vehicles. Though the officer issued several speeding citations prior to defendant's reappearance, he did not issue any after defendant's return. Defendant testified that he was only testing his lights. The trial judge was fully justified in rejecting the defendant's explanation as to why he was flicking his lights.

The ordinance under which defendant was charged provides as follows:

"No person shall resist, hinder, obstruct or abuse any official while such official is attempting to arrest offenders under this Traffic Code. No person shall interfere with any person charged under such sections with the enforcement of the law relative to public streets." Section 303.03, Codified Ordinances of Traffic of Warrensville Heights.

Although they relate to the same subject, each of the two sentences of this ordinance recites a separate and distinct offense. In essence, and for the purposes of this case, the first sentence makes it unlawful for anyone to obstruct a police officer who is attempting to arrest offenders violating the Traffic Code. To sustain a conviction for obstruction under this part of the ordinance, the prosecution must prove that the obstruction took place at a time when the officer was attempting to arrest an actual and not a potential traffic offender.

In this case, it is undisputed that the officer was not attempting to arrest a specific traffic offender at the time of defendant's arrest. For these reasons, defendant's conviction cannot stand. *Bastable* v. *Little* (1906), 76 K. B. 77, *Betts* v. *Stevens* (1909), 79 K. B. 17, *Akron* v. *Matteson* (1972), 63 Ohio Op. 2d 146.

The second sentence of Section 303.03 contains a different offense. This provision makes it unlawful for anyone to interfere with a police officer who is seeking to enforce the traffic laws relative to public streets. Under this provision the prosecutor is not required to prove that the interference took place at a time when an officer is attempting to arrest an actual offender.

Appellee in its brief argues that part two of this ordinance is applicable to this case and that defendant was indeed interfering with a police officer who was enforcing the traffic laws of Warrensville Heights. Such conclusion runs contrary to the record in this case. The trial judge made a specific finding that the defendant was guilty of obstructing a police officer in the performance of his duties. The trial court's judgment, therefore, was obviously ren-

dered for a violation of the first part of the ordinance.

Let us assume arguendo that the defendant was charged with and found guilty of interference with the police officer under the second branch of this ordinance. In such event, the conviction still cannot stand based on the testimony of the officer himself. The officer testified that the defendant did nothing to interfere with or slow down his duties at the time of defendant's arrest.

For these reasons, I find that defendant-appellant's assignment of error is well taken.

STILLMAN, J., dissenting. The full text of local ordinance 303.03 reads:

"No person shall resist, hinder, obstruct or abuse any official while such official is attempting to arrest offenders under this Traffic Code. No persons shall interfere with any person charged under such sections with the enforcement of the law relative to public streets."

We are concerned primarily with these words: "No person shall interfere with any person charged under such sections with enforcement of the law relative to public streets." A citizen who intrudes upon a police officer in the conduct of his proper duties is interfering with the officer, in violation of this ordinance. The First Amendment was not intended to permit a citizen to thwart a police officer in a legitimate exercise of his duties.

There is a further concern in this situation. The physical intrusion in this case may have served to warn offenders other than possible speeders of the presence of the police. For all the intruding citizen knows, a bank robber may be fleeing from his crime, a narcotic offender may be under surveillance or observation, or some other lawbreaker may be in the vicinity. The intrusive act of the citizen in flashing his headlights could very well signal a warning to potential or actual lawbreakers. Such activity is clearly not in the interest of the community.

The offense of obstructing an officer in the performance of his duty may be committed without the employment of force or violence. In *Athens* v. *Bromall* (1969), 20

Ohio App. 2d 140, involving a sit-in demonstration at Ohio University, the Court stated: "There rests on all persons the duty to do nothing which might interfere with policemen as they go about their duties of protecting the public." The court cited with approval *United States* v. *McDonald* (1879), 26 F. Cas. 1074, defining "obstructs, resists or opposes" in connection with the service or execution of process. In *McDonald*, the court declared:

"The statute, however, does not limit the offense to resistance alone, it includes also willful acts of obstruction or opposition; and to obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this term does not necessarily imply the employment of direct force, or the exercise of direct means. It includes any passive, indirect or circuitous impediment to the service or execution of process."

In *Ohio* v. *Anderson*, 46 Ohio St. 2d 219, decided by the Supreme Court of Ohio on May 12, 1976, the Court held that a police officer who had pursued a traffic offender outside of the city limits had the right to arrest an intruder who attempted to interfere with the traffic arrest.

This case presents a situation in which an officer is interfered with by verbal protestation constituting the obstruction of official business in contravention of R. C. 2921.31. The act of the appellant in the instant case is equally obstructive in the light of all the circumstances.

Immanuel Kant's *Categorical Imperative*, charging all people with the duty to conduct themselves so that they might will their conduct universal, should be a requirement of good citizenship. It was clearly transgressed by the defendant here and constitutes an act inimical to the enforcement of the law which should not be condoned. For these reasons, therefore, I must respectfully dissent from the majority opinion. I would affirm.