The STATE of Ohio, Appellee,

v.

SMITH, Appellant.

[Cite as *State v. Smith* (1996), 108 Ohio App.3d 663.]

Court of Appeals of Ohio,
Fourth District, Gallia County.

No. 95CA1.

Decided Jan. 23, 1996.

---

*Douglas M. Cowles,* Gallipolis City Solicitor, for appellee.

*James A. Bennett,* for appellant.

Kline, Judge.

This appeal arises from the Gallia County Municipal Court. Defendant-appellant Ray Smith was convicted of obstructing official business in violation of Gallipolis Municipal Ordinance 525.07. Gallipolis Municipal Ordinance 525.07 is identical to R.C. 2921.31(A).[1] Both state:

"No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties."

Appellant's "act" in violation of R.C. 2921.31(A) was boisterous speech to a police officer.

Appellant asserts the following three assignments of error:

"I. The court erred to the prejudice of the defendant by failing to grant the following proposed jury instruction: the statute prohibits 'any act' which hampers or impedes a public official. The failure of a person to respond to an officer's request is not a violation.

"II. The trial court erred in overruling the motion of the defendant to dismiss at the conclusion of the city's case and again at the conclusion of all the evidence.

"III. The court erred to the prejudice of the defendant in overruling [a] motion for new trial filed under Crim.R. 33."

Appellant was at his home in the company of several friends on the evening of August 19, 1994 with little to do. One of appellant's guests, Tim Queen, telephoned Steve Baird and the two exchanged taunts. The jeers were apparently too much for either of the two to handle, so they arranged to "settle the score" at appellant's residence. Officer Robbie Jacks was dispatched to appellant's home after reports were received of an altercation between Baird and Queen. Officer Jacks arrived on the scene and found Baird and appellant in the street and two of appellant's guests, Queen and Donnie Sheets, in the front yard. Queen promptly retreated toward the house. Officer Jacks retrieved Queen and brought him to the police cruiser. Queen was instructed to place his hands on the cruiser but was not placed under arrest.

Officer Jacks then attempted to ascertain the nature of the disturbance from Baird and Queen. Baird was standing in the street approximately ten feet from the police cruiser. Appellant was also standing in the street. As Officer Jacks questioned Baird and Queen, appellant loudly voiced his concerns. Officer Jacks

---

1. We will refer to R.C. 2921.31(A) throughout the remainder of this opinion.

could not converse with Baird or Queen because of appellant's shouting. Officer Jacks attempted to speak louder but appellant likewise increased his decibel level.[2] Appellant's comments were directed at the fact that it was his property and that Baird was the problem. Officer Jacks indicated that appellant's speech was nonthreatening and did not consist of "fighting words."

Officer Jacks told appellant numerous times to get back, but appellant did not do so. Officer Jacks finally issued an ultimatum that appellant retreat to the yard or be arrested. Appellant initially took several steps back in response to this ultimatum but then resumed his position near Officer Jacks. Officer Jacks then attempted to place appellant under arrest for obstruction of official business. Appellant initially pulled away but was quickly handcuffed by Officer Jacks. Events at appellant's residence resulted in the additional arrests of Brenda Pruitt and Sheets.

Appellant was charged with obstructing official business and resisting arrest.[3] The trials of appellant, Pruitt, and Sheets were consolidated into one at the request of the defendants. The jury returned a verdict acquitting on all charges except the obstruction of official business charge against appellant.

We first address appellant's second assignment of error regarding the denial of his Crim.R. 29(A) motion to acquit. When reviewing a trial court's denial of a Crim.R. 29(A) motion for acquittal, we must construe the evidence in a light most favorable to the state and determine whether reasonable minds could reach different conclusions concerning whether the evidence proves each element of the crime beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503; *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 263, 9 O.O.3d 401, 402, 381 N.E.2d 184, 185. An appellate court must not reverse the trial court's judgment unless reasonable minds could only reach the conclusion that the evidence failed to prove all elements of the crime beyond a reasonable doubt. *State v. White* (1989), 65 Ohio App.3d 564, 568, 584 N.E.2d 1255, 1258.

---

2. The direct examination of Officer Jacks included this exchange:

"Mr. Cowles: How loud was Mr. Smith?
"Officer Jacks: He wasn't yelling and screaming, he was just trying to, when I was trying to talk to Mr. Baird, he was trying to talk over me and I was trying to talk louder to talk to Mr. Baird or Mr. Queen. He would escalate higher to where I couldn't hear anything.
"Mr. Cowles: Were you able to discuss what was going on with Mr. Baird?
"Officer Jacks: No."

3. Appellant was not charged with disorderly conduct in violation of R.C. 2917.11.

The trial court found that appellant's loud and boisterous speech was a sufficient "act" in violation of the obstruction-of-official-business statute.[4] Appellant contends that boisterous presentation of true facts[5] is not an "act" in violation of R.C. 2921.31(A). We therefore must determine whether the "act" prohibited by the obstruction-of-official-business statute encompasses true oral statements spoken boisterously.

Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, there is no need to apply rules of statutory construction. *Cline v. Ohio Bur. of Motor Vehicles* (1991), 61 Ohio St.3d 93, 96, 573 N.E.2d 77, 79–80; *Sears v. Weimer* (1944), 143 Ohio St. 312, 28 O.O. 270, 55 N.E.2d 413, paragraph five of the syllabus. However, where a statute is found to be subject to various interpretations, a court called upon to interpret its provisions may invoke rules of statutory construction to rely on legislative intent. *Cline, supra; Carter v. Youngstown* (1946), 146 Ohio St. 203, 32 O.O. 184, 65 N.E.2d 63, paragraph one of the syllabus. Sections of the Revised Code defining offenses are to be strictly construed against the state and liberally in favor of the accused. R.C. 2901.04.

In *Dayton v. Rogers* (1979), 60 Ohio St.2d 162, 164, 14 O.O.3d 403, 404–405, 398 N.E.2d 781, 782–783, the Ohio Supreme Court held that an unsworn false statement made to a police officer was not an "act" in violation of R.C. 2921.31(A). The Ohio Supreme Court stated:

"R.C. 2921.31(A) * * * prohibits 'acts' which hamper or impede public officials in the performance of their lawful duties. While in certain contexts the term 'act' may be construed to include a statement, we do not believe that was the intent of the General Assembly in R.C. 2921.31(A)." *Id.*

The Ohio Supreme Court recently limited *Dayton v. Rogers* to its facts and held that unsworn false oral statements made to law enforcement officers are punishable conduct within R.C. 2921.32(A)(5). *State v. Bailey* (1994), 71 Ohio St.3d 443, 448, 644 N.E.2d 314, 317–318.[6] The Ohio Supreme Court reasoned

---

**4.** The trial court found that appellant's inaction in response to Officer Jacks's orders did not constitute an act for purposes of R.C. 2921.31(A) because one cannot obstruct official business by doing nothing. *Garfield Hts. v. Simpson* (1992), 82 Ohio App.3d 286, 291, 611 N.E.2d 892, 895–896; *Hamilton v. Hamm* (1986), 33 Ohio App.3d 175, 176, 514 N.E.2d 942, 942–943. The trial court denied appellant's Crim.R. 29(A) motion because it felt that appellant's boisterous speech alone was a sufficient "act" in violation of R.C. 2921.31(A).

**5.** Appellant's speech included opinions on which party was responsible for the altercation. It is unclear who was responsible for the altercation.

**6.** The trial court ruled on appellant's Crim.R. 29(A) motion at trial on November 10, 1994. *State v. Bailey* was released on December 30, 1994. *State v. Bailey* is applicable to the case *sub judice.* See *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468.

that there was a strong governmental interest in discouraging individuals from knowingly giving false information to law enforcement officials as well as preventing the waste of limited police resources. *Id.* at 447, 644 N.E.2d at 317.

The Ohio Supreme Court in *State v. Bailey* construed R.C. 2921.32(A)(5), which provides:

"(A) No person, with purpose to hinder the discovery, apprehension, prosecution, conviction, or punishment of another for crime, or to assist another to benefit from the omission of a crime, shall do any of the following:

" * * *

"(5) Communicate false information to any person."

*State v. Bailey* did not address whether a true [7] oral statement spoken boisterously is now an "act" for purposes of R.C. 2921.31(A). *State v. Bailey* interpreted R.C. 2921.32(A)(5), which specifically proscribes the conduct of false communication, while R.C. 2921.31(A) proscribes conduct characterized by the general term "act." *Dayton v. Rogers* held that the term "act" in R.C. 2921.31(A) did not encompass any oral statements, but the continued viability of *Dayton v. Rogers* is in question in light of *State v. Bailey*.

"Act" as used in R.C. 2921.31(A) could be read to encompass oral statements spoken boisterously. We note that the movement of the tongue is clearly a sufficient act upon which to impose criminal liability. Numerous statutes prohibit acts of speech such as perjury, solicitation, or conspiracy, but these statutes examine the content of the speech before classifying speech as a prohibited act.[8] Disorderly conduct penalizes acts of speech which are unreasonably loud regardless of the content of the speech.[9] The statutory prohibition against obstruction of official business which proscribes "acts" may encompass oral statements, but the speech proscribed by means of the general term "acts" is unclear and ambiguous and will depend upon the content or volume of the speech. We therefore find that the meaning of the term "act" in R.C. 2921.31(A) is subject to various interpretations regarding whether oral statements spoken boisterously

---

7. We define "true statement" for purposes of this opinion as referring to a not purposely false or erroneous statement.

8. These statutes do not, however, refer to the proscribed speech by use of the term "act." Rather, they use more specific terms: perjury, R.C. 2921.11, uses the term "false statement"; soliciting, R.C. 2907.24, uses the term "solicit"; conspiracy, R.C. 2923.01, requires an "overt act."

9. Disorderly conduct, R.C. 2917.11, uses the terms "making unreasonable noise or an offensively coarse utterance * * * or communicating unwarranted and grossly abusive language" to refer to the prohibited speech.

are encompassed within the term. We note that we can find no case law for the proposition that "act" as used in R.C. 2921.31(A) encompasses true or loud oral statements.

Since we find that the meaning of the term "act" as used in R.C. 2921.31(A) is ambiguous and unclear, we find it necessary to resort to the intent of the General Assembly in enacting this statute. See R.C. 1.49; *Cline, supra; Carter v. Youngstown, supra.* The Ohio Supreme Court previously examined the intent of the General Assembly in enacting R.C. 2921.31(A) in *Dayton v. Rogers* and found that the term "acts" did not encompass oral statements. We therefore hold that "acts" proscribed in R.C. 2921.31(A) does not include unsworn true oral statements even if spoken boisterously. We do not address whether "acts" proscribed in R.C. 2921.31(A) encompass false oral statements.[10]

Courts are to construe a statute in such a way as to save it from constitutional infirmity. See *State v. Sinito* (1975), 43 Ohio St.2d 98, 101, 72 O.O.2d 54, 56, 330 N.E.2d 896, 898–899. Mindful of this mandate, our interpretation of R.C. 2921.31(A) is colored by potential constitutional overbreadth and vagueness concerns. The First Amendment protections of free speech encompass a significant amount of verbal criticisms and challenges directed at police officers. See *Houston v. Hill* (1987), 482 U.S. 451, 462, 107 S.Ct. 2502, 2509–2510, 96 L.Ed.2d 398, 412. If we were to hold that true oral statements are "acts" for purposes of R.C. 2921.31(A), R.C. 2921.31(A) would likely be susceptible to charges of overbreadth for prohibiting a substantial amount of constitutionally protected conduct.[11] Alternatively, if we were to hold that boisterously spoken comments regardless of their veracity were an "act," R.C. 2921.31(A) would likely be unconstitutionally vague for providing no clear guideline to the

---

10. The Ninth Appellate District has held that an unsworn false oral statement to a police officer constitutes an "act" in violation of R.C. 2921.31(A). *State v. Reynolds* (Sept. 20, 1995), Lorain App. No. 94CA6021, unreported, 1995 WL 553168. The court in *State v. Reynolds* did not consider whether "act" was ambiguous and instead relied upon the similarity of R.C. 2921.31(A) to 2921.32(A)(5), which was interpreted in *State v. Bailey.*

11. A statute is unconstitutionally overbroad when "the [statute] sweeps within its prohibitions what may not be punished under the First * * * Amendment." *Grayned v. Rockford* (1971), 408 U.S. 104, 114–115, 92 S.Ct. 2294, 2302, 33 L.Ed.2d 222, 231; *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 386, 618 N.E.2d 138, 148. The determination of constitutionality must be based upon the statute and any judicially imposed limiting construction. *Boos v. Barry* (1988), 485 U.S. 312, 329, 108 S.Ct. 1157, 1168, 99 L.Ed.2d 333, 349–350.

If R.C. 2921.31(A) were construed to include true oral statements within the meaning of "act," one could be subject to arrest for calmly speaking with an officer if the officer felt the statement had hampered an investigation. One might later be acquitted for lack of evidence of intent, but the arrest would be justified under the statute. The arrest itself would certainly chill First Amendment rights as well as decrease the assistance given to public officials.

impermissible volume that hampers a public official.[12] Our interpretation of R.C. 2921.31(A) avoids these pitfalls.

In the case *sub judice,* appellant was convicted of R.C. 2921.31(A) solely for his boisterous statements to Officer Jacks. We hold that appellant's comments are not an "act" for purposes of R.C. 2921.31(A) and therefore reverse the judgment of the trial court. See *State v. White, supra.* Appellant's second assignment of error is sustained. We remand this cause to the trial court with the instruction that the charge of obstructing official business be dismissed. App.R. 12(B).

We need not address appellant's first and third assignments of error due to our disposition of the second assignment of error. App.R. 12(A)(1)(c).

*Judgment reversed*
*and cause remanded.*

STEPHENSON, J., concurs.

HARSHA, J., dissents.

HARSHA, Judge, dissenting.

I respectfully dissent. The gist of the offense of obstructing justice focuses upon an actor's *conduct* and its *effect,* regardless of whether the "act" complained of involves speech. Thus, the distinction between true oral statements and false oral statements is not determinative of the issue at hand.

The conduct which is precluded by R.C. 2921.31(A) is purposely hampering an official in the performance of his lawful duty. That one may accomplish such an unauthorized hindrance by true statements, as well as by false ones, can be seen by the following example. Assume that a police officer is investigating a car accident involving severe personal injuries at a busy intersection. An individual approaches the officer and informs her that "I've just witnessed a teenager

---

**12.** A statute is unconstitutionally vague when the prohibitions are not clearly defined. *Grayned v. Rockford,* 408 U.S. at 108–109, 92 S.Ct. at 2298–2299, 33 L.Ed.2d at 227–228; *Akron v. Rowland,* 67 Ohio St.3d at 381, 618 N.E.2d at 144–145. The law must give the person of ordinary intelligence a reasonable opportunity to know what is prohibited. *Grayned v. Rockford, supra.*

If R.C. 2921.31(A) were construed to include loud oral statements within the meaning of "act," one would have little guidance regarding the volume that is impermissible. Police would have largely unfettered discretion to arrest by claiming that the volume of a statement had hampered an investigation.

We note the confusion regarding the possible vagueness of the term "unreasonable noise" as used in the disorderly conduct statute. See *Fairborn v. Grills* (June 8, 1994), Greene App. No. 92CA92, unreported, 1994 WL 247122 ("unreasonable noise" not vague); *State v. Compher* (Dec. 9, 1985), Ross App. No. 1174–1175, unreported, 1985 WL 17456 ("unreasonable noise" vague). "Unreasonable noise" is more descriptive of a prohibited conduct than the term "act."

shoplift a candy bar from the Quick Stop gas mart next door." This is, in fact, a true statement. The officer then asks the shoplifting witness to wait until she has administered first aid to accident victims, but the citizen insists upon talking to the officer because "the kid is getting away!" Again, a true statement. Despite repeated admonishments from the officer, the citizen becomes more and more agitated and insistent to the point that the officer cannot administer first aid. Assuming the *mens rea* element of purposefulness has been satisfied, as has been done in the case before us, has the citizen violated R.C. 2921.31(A)?

Clearly, proper focus in this case is on Smith's conduct and its effect. It matters little whether the conduct is verbal or nonverbal, true or untrue, for the appellant has not raised a First Amendment issue in his assignments of error.

Under the standard set forth in *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503, and construing the evidence in a light most favorable to the prosecution, I believe a reasonable mind could conclude that appellant's boisterous speech was an act within the meaning of the statute because it prevented the officer from completing his investigation of the fight. Therefore, I would affirm.