OPINION
Defendant-Appellants Ralph and Nancy Van Hoose appeal the trial court's verdict finding them guilty of obstructing official business. Although the record is sketchy due to a poor transcript, the relevant facts are as follows:
On the morning of August 6, 1999, the Van Hooses were with their eleven-year-old grandson on the front porch of their home near the intersection of Third and Garfield Streets. Some time in the late morning, Mrs. Van Hoose contacted the City of Dayton Police Department to report the presence of a prostitute at the intersection. The City witnesses testified that this "prostitute" was simply standing on the corner, or walking around, where the defense witness testified she was grabbing body parts. Before a patrol car arrived, some plain clothes detectives approached the Van Hoose residence and explained to the couple that the police were involved in a Decoy Prostitution Operation ("DPO") at the corner of Third and Garfield, and the "prostitute" was actually an undercover police officer.
At some point, a patrolman in a marked cruiser arrived in response to Mrs. Van Hoose's call, unaware of the DPO. The detectives involved in the DPO testified that the arrival of the marked cruiser stopped the operation, at least temporarily. Soon after discovering the DPO, the patrolman left the scene. Meanwhile, after the detectives had explained to the Van Hooses the nature of their investigation, the Van Hooses continued to object to the decoy's presence at the intersection. When it appeared to them that the police did not intend to abandon this operation, they began hollering and gesturing towards the decoy, yelling that she was a police officer.
The detectives testified that one potential "john" had circled the block several times, speaking to the decoy and asking her to breakfast. At one point he made eye contact with the decoy, but waved her off while the Van Hooses were hollering from their front yard. This individual was later arrested on an undisclosed charge.
After repeated attempts to calm the Van Hooses failed, Detective Weber had warned them that they would be arrested if they did not stop yelling. When they did not comply, they were placed under arrest for disorderly conduct and obstructing official business. At a bench trial, the Van Hooses were found guilty of obstructing official business and not guilty of disorderly conduct. They now appeal their conviction, raising the following assignments of error:
 The trial court committed prejudicial error by finding the Appellants guilty when their conduct was protected by the First Amendment of the United States Constitution.
 The trial court committed prejudicial error in overruling the Rule 29 motion of the Appellants at the close of the City's evidence.
 The trial court committed prejudicial error by finding the Appellants guilty absent proof beyond a reasonable doubt.
 I
In their first assignment of error, the Van Hooses argue that their conduct on the day of the arrest was protected under theFirst Amendment. In addition, they allege that if the obstructing official business ordinance does apply to their conduct, the ordinance is overbroad, encompassing protected speech. When a statute faces a constitutional challenge, there is a strong presumption in favor of constitutionality. State v. Warner (1990), 55 Ohio St.3d 31, 43. Furthermore, courts will liberally construe statutes to save them from constitutional infirmities. State v. Sinito (1975), 43 Ohio St.2d 98,101.
To determine whether a statute or ordinance violates theFirst Amendment, we must first establish if it regulates the content of speech, or simply the time, place and manner. A restriction is considered content-neutral if it is justified without any reference to the content of the speech. United Auto Workers, Local Union 1112 v. Philomena
(1998), 121 Ohio App.3d 760, 794, citing Boos v. Barry (1988),485 U.S. 312, 320. "The term `content' does not refer solely to viewpoint based, but also refers to entire topics. (Citations omitted). Laws that, by their terms, apply to speech based on the topic or viewpoint of the expression are content-based." Id., citing Burson v.Freeman (1992), 504 U.S. 191, 197. The obstructing official business ordinance at issue, R.C.G.O. 131.02(A)[1] does not refer to any particular topic, but instead involves the effect of a defendant's conduct on a public official. Ohio courts have come to varying conclusions when determining if an individual's freedom of speech is violated when the obstructing official business statute is applied to mere speech. See e.g., State v. Smith (1996), 108 Ohio App.3d 663; City of Warren v.Lucas (May 19, 2000), Trumbull App. No. 99-T-0019, unreported.
The Smith court found that the term "acts" in the statute did not encompass true oral statements. Smith, supra, at 669. In Smith, the defendant yelled at police in the street in front of his house while they attempted to investigate a disturbance and arrest an individual involved. The court reasoned that if it were to find Smith's conduct to be an "act" under the statute, then the statute would be susceptible to overbreadth charges. Because courts are to construe statutes to save them from constitutional infirmity, the Smith court found defendant's conduct did not violate the statute. Id.
On the other hand, the Lucas court held that a defendant's overall conduct must be examined to determine if it will sustain a conviction for obstruction of official business. In Lucas, an individual boisterously prevented police from talking to his girlfriend about an ongoing investigation in which he was not involved. The court specifically disagreed with the Smith court's reasoning and found that not only his words, but the defendant's overall conduct must be examined to determine if he has obstructed official business. After examining the overall conduct, the court found that Lucas' volume and demeanor prevented the police investigation more than any specific words that were said. Id. at p. 3. Similar conclusions were reached in State v. Foster (Sept. 17, 1997), Seneca Ap. No. 13-97-09, unreported (rejecting the Smith court's holding and finding that defendant's conduct and its effect on the public official were relevant actions for the offense of obstructing official business); and State v. Overholt (Aug. 18, 1999), Medina App. No. 2905-M, unreported (finding defendant's refusal to leave scene and interference with officer's attempts to complete an arrest as well as profane outbursts were sufficient to constitute acts for the offense of obstructing official business).
Furthermore, in State v. Neptune (April 21, 2000), Athens App. No. 99CA25, unreported, the Fourth District expressly rejected its previous holding in Smith, finding that a boisterously spoken comment could constitute an act for purposes of the obstructing official business statute. The court held that a jury should focus on the defendant's conduct, whether it is verbal or physical, and its effect on the public official's ability to perform his lawful duties. Id. at p. 10. In so finding, the court commented that this interpretation is consistent with the plain wording of the statute which does not require a physical act.Id. Further, by rejecting the holding in Smith, the Neptune court impliedly discounted the notion that this interpretation would directly violate free speech or be subject to overbreadth attacks. Because the focus is on the effect of defendant's overall conduct, the statute does not regulate the content of speech, but instead regulates the manner of speech. Therefore, the regulation is subject to less scrutiny than content-based regulations.
Restrictions on the manner of speech require an intermediate level of scrutiny. The restriction will be upheld if it is "justified without reference to the content of the regulated speech, is narrowly tailored to serve a significant government interest, and leaves open ample alternative channels of communication." United Auto Workers, Local Union1112, 121 Ohio App.3d at 794, citing Ward, 491 U.S. at 791. See alsoUnited States v. O'Brien (1968), 391 U.S. 367, 376-77. When applying this test to R.C.G.O. 131.02, we find that the regulation is justified and narrowly tailored to permit the significant government interest of allowing public officials to conduct their business without interference.
Based on the foregoing discussion, we find that R.C.G.O. 131.02(A) does not violate the Van Hooses' First Amendment rights. Accordingly, the first assignment of error is overruled.
 II
The Van Hooses' second assignment of error alleges that the trial court erred in overruling their Crim. R. 29 motion for acquittal. A Crim. R. 29 motion tests the sufficiency of the evidence presented at trial. When an appellant alleges a sufficiency of the evidence error, the court must determine whether the evidence is "legally sufficient as a matter of law to support the jury verdict." State v. Clemons (1998), 82 Ohio St.3d 438,444 (citations omitted). An appellate court's standard when presented with this question "is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. More precisely, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
The Van Hooses argue that at least one element of the offense of obstructing official business was not proven by the City. Both Van Hooses were convicted of violating R.C.G.O. 131.02(A), which reads:
 No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within his official capacity, shall do any act which hampers or impedes a public official in the performance of his lawful duties.
In order for the statute to be violated, the Van Hooses claim that the City must prove the occurrence of an illegal act by another individual at the time that they interfered with the officers. In support of this proposition, they rely on City of Warrensville Hts. v. Wason (1976),50 Ohio App.2d 21, State v. Jelliffe (1982), 5 Ohio Misc.2d 20, and Akronv. Matteson (1972), 63 O.O.2d 146. However, two of these cases addressed different ordinances than involved in the present case.
In Wason, the court found that warning oncoming automobiles of an approaching radar speed trap did not constitute obstructing official business unless the State could prove that at least one of the individuals warned was actually speeding at the time. Wason, supra, at 25-26. We must point out, however, the ordinance violated in Wason
stated: "No person shall resist, hinder, obstruct or abuse any official while such official is attempting to arrest offenders under this TrafficCode." Id. at 21, citing Section 303, Codified Ordinances of Traffic of Warrensville Heights (emphasis added). This language specifically prohibits individuals from interfering during an arrest, whereas the ordinance in the present case prohibits interfering with any lawful activity of a public official.
Although Matteson was charged with violation of a statute similar to the Dayton ordinance, that court too, relied on the language of a statute similar to the one in Wason. The Akron Municipal Court found the language of the Wason-type ordinance persuasive in determining whether Matteson had actually obstructed official business by flashing her headlights to warn approaching vehicles. Matteson, supra. Because there was no evidence that any vehicles had curtailed illegal activity based on her warning, the court found that she had not violated the statute. Id.
Finally, the Jelliffe court concerned R.C. 2921.31(A), which contains identical language to the Dayton ordinance. Nevertheless, the municipal court relied on the reasoning of Wason and Matteson in reaching the conclusion that the statute could not be violated absent ongoing illegal activity at the time of the obstruction. This reasoning is flawed, however, in light of the fact that the other cases involved statutes with different language.
The Van Hooses also reference Dayton v. Rogers (1979), 60 Ohio St.2d 162
for the proposition that unsworn false statements made to impede an investigation do not violate the statute, and therefore, unsworn true statements likewise should not violate it. However, Rogers has since been overruled by State v. Lazzaro (1996), 76 Ohio St.3d 261, where the supreme court held that such unsworn false statements do violate R.C.2921.31(A).
Furthermore, we find no merit in the Van Hooses' argument that the statute was not violated because their hollering and gesturing did not obstruct any arrest. Based on the above discussion and the plain language of the statute, we find that the statute does not require the police to be confronted with an illegal act at the time of the interference. The statute merely requires that the defendant: "(1) performed an act; (2) with the purpose to prevent, obstruct or delay a public official; (3) which hampered or impeded the official's duties; and, (4) was not protected by any privilege." City of Warren v. Lucas
(May 19, 2000), Trumbull App. No. 99-T-0019, unreported, at p. 2.
When viewing the evidence in a light most favorable to the prosecution, a rational trier of fact could have found that all of these elements were proven. The Van Hooses hollered in their front yard revealing the identity of an undercover police officer with the purpose of obstructing their investigation and forcing her to leave. As a result, the DPO could not continue, as the undercover officer's identity was revealed. Accordingly, the second assignment of error is overruled.
 III
The third assignment of error appears to claim that the verdict was against the manifest weight of the evidence. When determining whether a conviction is against the manifest weight of the evidence, a different inquiry is employed than with the sufficiency of the evidence. In a manifest weight claim, the appellate court "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Thompkins (1997), 78 Ohio St.3d 380,387. A verdict should only be overturned in extraordinary situations when evidence weighs heavily against the conviction. Id.
In light of the law as explained above, the City undoubtedly presented evidence proving all elements of the offense. The Van Hooses did not present any evidence contradicting the events as described by the City's witnesses. Certainly their intent in hollering that the decoy prostitute was a police officer was to reveal her identity and halt the operation, forcing her to leave. The Van Hooses argue that it was the arrival of the police cruiser, not their conduct, that thwarted the investigation. However, a detective testified that the police cruiser's arrival had halted the operation momentarily, but once he became aware of the operation, he had departed, and the operation had resumed. On the other hand, the Van Hooses continued to yell and holler that the "prostitute" was really a police officer, and showed no signs of stopping until they were removed or the DPO was terminated.
After reviewing the entire record, we find that the Van Hooses' convictions were not against the manifest weight of the evidence. Accordingly, their third assignment of error is overruled. Judgmentaffirmed.
 _______________ BROGAN, J.,
WOLFF, J., and YOUNG, J., concur.
[1] R.C.G.O. 131.02(A) contains identical language to R.C. 2921.31(A), so "obstructing official business statute" refers to the language contained in both.