OPINION.
{¶ 1} Defendant-appellant Gerald Jeter appeals his conviction for obstruction of official business. During a "sting" of prostitution customers, Jeter began yelling to warn potential customers that the woman appearing to be a prostitute was in fact a police officer, not only busting the "sting" but also placing the officer in danger.
 {¶ 2} Because we believe that danger to officers can elevate mere words into punishable conduct, we affirm.
 I. The Sting {¶ 3} On April 8, 2004, Cincinnati police were conducting a prostitution investigation in a high-prostitution area. Officer Josie Dillinger was working undercover, posing as a prostitute. Dillinger would stand on a street corner and wait for a car to approach her. She would then negotiate an act and a price with a customer. Dillinger would then motion to other police officers, who were a block away, and the other officers would arrest the customer.
 {¶ 4} Throughout the week, Dillinger had initiated 49 arrests with this procedure. She testified that, during the week, only one car had approached her that did not result in an arrest.
 {¶ 5} On that particular day, Dillinger had worked for several hours and had initiated several arrests. She testified that she noticed Jeter standing on the corner opposite her for about ten or fifteen minutes. While Jeter was standing on the street, Dillinger negotiated with a customer who was subsequently arrested. Dillinger testified that she saw Jeter observe the arrest of the customer.
 {¶ 6} After that arrest, two new cars began circling the block with the drivers looking at Dillinger. Both cars parked within a block of her. A man in one of the cars motioned for Dillinger to come over.
 {¶ 7} Dillinger testified that, as she approached the car, Jeter began yelling, "She is the police, she is the fucking police, she is the police." According to Dillinger, Jeter was screaming at the top of his voice and repeated his warning five or six times. Jeter was about 30 feet from Dillinger.
 {¶ 8} Dillinger testified that the car she was approaching had its windows down. The driver looked at Jeter as he was screaming, looked back at Dillinger, looked again at Jeter, and then drove off. As soon as Jeter yelled, the second car that had stopped also drove away very quickly.
 {¶ 9} The police arrested Jeter for obstruction of official business. Dillinger testified that, in addition to hampering the investigation, Jeter's exposure of her as an undercover police officer made her feel nervous and uncomfortable because she was not carrying a weapon or wearing any body armor. After Jeter's intervention, the investigation was stopped and moved to a different location.
 II. A Word Can be an Act {¶ 10} On appeal, Jeter presents three assignments of error, all challenging the sufficiency of the evidence. A challenge to the sufficiency of the evidence questions whether the evidence is legally adequate to support a conviction on all elements of an offense.[1] The relevant inquiry in a claim of insufficiency is whether any rational factfinder, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proved beyond a reasonable doubt.[2]
 {¶ 11} The statute defining obstruction of official business states, "No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties."[3]
 {¶ 12} Jeter first argues that a verbal act alone is not enough to constitute obstruction of official business. But in State v. Lazzaro, the Ohio Supreme Court held that a verbal statement alone could be a proscribed act.[4] The court held that unsworn, false oral statements made to impede an officer's investigation were punishable as an obstruction of official business.[5] Lazzaro overruled Dayton v.Rogers,[6] which had held to the contrary. Earlier cases cited by Jeter that relied on Dayton v. Rogers (including State v. Jelliffe,[7] this author's first published case), were overruled by implication.
 {¶ 13} Following Lazzaro, the Second Appellate District held that "statements alone can constitute an `act' within the meaning of the [obstruction of official business] statute."[8] The court also concluded that the statute was a content-based restriction on speech that was sufficiently justified by the government's compelling interest in protecting the safety of undercover police officers. And in State v.Foster, the Third Appellate District held that speech alone, even if truthful, can constitute obstruction of official business where a defendant interferes with a public official's duties.[9]
 {¶ 14} In addition, Jeter cites State v. Smith, a Fourth Appellate District case in which the court held that true statements, even if spoken boisterously, did not constitute obstructive acts.[10] But inState v. Neptune, the Fourth Appellate District expressly rejected its earlier holding in Smith.[11] In Neptune, the court held that the proper focus in a prosecution for obstructing official business is "on the defendant's conduct, verbal or physical, and its effect on the public official's ability to perform his lawful duties."[12]
 {¶ 15} Though we must be extremely careful when punishing mere words, we conclude here that Jeter's statement could be a sufficient act to constitute obstruction of official business. Therefore, a rational factfinder, viewing the evidence in this case in a light most favorable to the state, could have found that the state had proved that Jeter committed an act.
 III. Preventing Arrest Not Necessary {¶ 16} Jeter next argues that the state failed to prove that he had interfered with police business, because there was no proof that the two drivers approaching Dillinger were attempting to solicit her. But Jeter is mistaken in arguing that the state was required to prove that Jeter's conduct actually prevented an arrest of a person violating the law. The state merely had to prove that Jeter's conduct obstructed the police from performing their official duties.
 {¶ 17} Jeter's theory of the state's burden of proof was expressly rejected by the Second Appellate District in Dayton v. Van Hoose.[13]
In Van Hoose, the court held, based on the plain language of the statute, that "the statute does not require the police to be confronted with an illegal act at the time of the interference. The statute merely requires that the defendant: `(1) performed an act; (2) with the purpose to prevent, obstruct or delay a public official; (3) which hampered or impeded the official's duties; and (4) was not protected by any privilege.'"[14]
 {¶ 18} In Van Hoose, the Van Hooses were standing on their front porch yelling to passersby that a woman appearing to be a prostitute was actually a police officer — very similar to this case, except that the Van Hooses were on their own property. The Second Appellate District held them to be guilty, even considering a free-speech challenge, which was not raised here.[15]
 {¶ 19} When Jeter exposed Dillinger's undercover status, the drivers approaching her quickly drove away. Dillinger testified that 49 out of 50 cars that approached her had resulted in arrests. She also testified that she felt nervous and uncomfortable once her status as a police officer was revealed. She did not have a weapon or any body armor, and the nearest backup officers were a block away. In addition, as soon as Jeter acted, the prostitution sting was shut down and moved to a different location. We are convinced that Jeter's conduct hampered the investigation.
 {¶ 20} Jeter likens his act to that of a driver flashing his lights to warn oncoming motorists of the presence of a police officer. But unlike the general warning of flashing lights, Jeter's act was directed at specific individuals who, we can reasonably infer, were facing imminent arrest. And while there might be other reasons for a driver to flash his lights, it is clear that Jeter's act was meant to warn the drivers that they were about to be caught up in a police investigation.
 IV. Danger is Relevant {¶ 21} But perhaps the most important difference between a driver flashing his lights and Jeter's act is that Jeter's act placed Officer Dillinger in potential danger. Unlike a police officer waiting for speeding cars, Dillinger was acting undercover without a weapon, with backup a block away. Jeter's act was dangerous to Dillinger and was the type of behavior the statute was meant to prohibit.
 {¶ 22} And what about an undercover officer infiltrating a drug ring — or a criminal gang — surely no one would argue that disclosing the officer's identity would not be a crime. Though the danger in this case was not as great, the principle is the same — danger to officers elevates mere words into criminal conduct.
 {¶ 23} We conclude that a rational factfinder, viewing the evidence in a light most favorable to the state, could have found that the state had proved that Jeter's act hampered and impeded Dillinger and other police officers in their efforts to conduct a prostitution investigation.
 {¶ 24} Therefore, we overrule all three of Jeter's assignments of error and affirm the judgment of the trial court.
Judgment affirmed.
Gorman, P.J., and Sundermann, J., concur.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541.
[2] See State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
[3] R.C. 2921.31(A).
[4] See State v. Lazzaro, 76 Ohio St.3d 261, 264, 1996-Ohio-397,667 N.E.2d 384.
[5] Id.
[6] See Dayton v. Rogers (1979), 60 Ohio St.2d 162, 398 N.E.2d 781.
[7] See State v. Jelliffe (1982), 5 Ohio Misc.2d 20, 449 N.E.2d 810.
[8] See State v. Cooper, 151 Ohio App.3d 790, 2003-Ohio-1032,786 N.E.2d 88, at ¶ 23.
[9] See State v. Foster (Sept. 17, 1997), 3rd Dist. No. 13-97-09.
[10] See State v. Smith (1996), 108 Ohio App.3d 663, 671 N.E.2d 594.
[11] See State v. Neptune (Apr. 21, 2000), 4th Dist. No. 99CA25.
[12] Id.
[13] See Dayton v. Van Hoose (Dec. 8, 2000), 2nd Dist. No. 18053.
[14] Id., quoting Warren v. Lucas (May 19, 2000), 11th Dist. No. 99-T-0019.
[15] Id.