DECISION
{¶ 1} The defendant-appellant, Kenneth Payne, appeals his adjudication of delinquency for obstructing official business, in violation of R.C.2921.31(A), a second-degree misdemeanor if committed by an adult. He was ordered to complete five days of a work detail and to pay court costs.
 {¶ 2} The state requests we hold that Payne has already completed his sentence and, therefore, that the appeal is moot and should be dismissed. The mootness doctrine provides that where a defendant, convicted of a misdemeanor, voluntarily satisfies the judgment imposed upon him or her for that offense, an appeal from the conviction is moot unless the defendant has offered evidence from which an inference can be drawn that he or she will suffer some collateral disability or loss of civil rights stemming from the conviction.[1] We cannot find any authority prohibiting the application of the mootness doctrine to juveniles who have been adjudicated delinquent.[2] So if the record demonstrates that Payne has served his sentence, the mootness doctrine would apply, and we would dismiss this appeal as moot unless Payne could offer evidence of a collateral disability or loss of civil right stemming from the adjudication.
 {¶ 3} The state bases its mootness argument on a comment by defense counsel, made at the hearing on Payne's objections to the magistrate's decision, in which counsel said she "believe[d]" that Payne had completed the five days of work detail imposed by the magistrate. But we are not persuaded that these equivocal words demonstrate that Payne has served his sentence, because the trial court, by entry, specifically stayed the work detail while it reviewed Payne's objections to the magistrate's decision. Further, after overruling the objections, the court ordered Payne to report for five days of work detail — when notified — and to pay court costs immediately. The court's staying of the sentence and reordering it in this manner indicates that Payne has not served his sentence.
 {¶ 4} Typically, a person convicted of a misdemeanor must seek a stay of the sentence or fine in the trial court to retain his stake in the controversy and to preserve the right to appeal.[3] Otherwise, the sentence will be served and an appellate court cannot provide any meaningful remedy. While the record does not demonstrate that Payne filed for a stay of the trial court's judgment, neither does it demonstrate that Payne had actually been notified to report for his work detail or that he had paid his court costs. We decline to find the appeal moot on this record, especially when Payne does not have any prior juvenile adjudications.
 {¶ 5} We now review the merits of Payne's appeal. In his single assignment of error, Payne argues that his adjudication was not supported by sufficient evidence. We agree and reverse.
 {¶ 6} In the evening of March 19, 2004, Cincinnati police officers Richard Smith and Joseph Corry, while on patrol, heard a radio broadcast concerning a vehicle theft near their patrol area. The suspect, who had crashed the vehicle and escaped on foot, was described as a black male wearing dark clothing and a red hat. After seeing an individual matching that general description crossing the street ahead of them, the officers pulled their cruiser to the curb, jumped from the cruiser, and detained Payne, a juvenile. Officer Smith described the encounter as an investigatory stop, undertaken so that an officer who had been pursuing the stolen vehicle could "either identify [Payne] positively or negatively" as a suspect.
 {¶ 7} When questioned by the police about his identity and residency, Payne became argumentative. But the police did establish his name and his address, and they were able to confirm rather quickly that Payne was not the suspect sought in the vehicle theft.
 {¶ 8} During Payne's encounter with the officers, his cousin, Victor Watts, also a juvenile, approached the scene and told the officers that they could not detain Payne. Watts walked up to Payne, grabbed his shoulder, and tried to physically remove Payne from the area. There was no testimony that Payne aided Watts's disruptive behavior.
 {¶ 9} Officer Smith did testify that, at a later point in the detention, Payne attempted to flee and flailed his arms to resist being handcuffed. But this testimony conflicted with testimony from other witnesses, and the magistrate found, after listening to all the testimony, that Payne simply became argumentative with the police and would not answer their questions about his identity. Thus, Payne's adjudication was based solely upon his speech.
 {¶ 10} An appellate court reviews a claim of insufficiency by determining whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found every element of the offense beyond a reasonable doubt.[4] Sufficiency of the evidence is "a question of law, the resolution of which does not allow the court to weigh the evidence."[5]
 {¶ 11} To support an adjudication for obstructing official business in violation of R.C. 2921.31, the state had to prove that Payne (1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties. We note that a defendant's mere refusal to disclose his name to a police officer will not support a conviction for obstructing official business.[6]
 {¶ 12} We must examine whether Payne's argumentative — but true — statements constituted an "act" proscribed under the statute. The Ohio Supreme Court has not offered a bright-line rule for determining what conduct falls within the scope of the term "act" under R.C. 2921.31(A). But speech alone may in some cases be sufficient to satisfy the act requirement, as the court has held actionable an unsworn false oral statement to a public official, where the statement was made with purpose to mislead, hamper or impede the investigation of a crime.[7]
 {¶ 13} Payne, citing to the Fourth Appellate District's decision inState v. Smith,[8] argues that true statements, even those made boisterously, are not acts under the statute. He submits that because his statements were entirely truthful, they were per se outside the scope of R.C. 2921.31. We disagree and note that the Fourth Appellate District expressly overruled Smith in State v. Neptune,[9] holding that the proper focus for an obstructing conviction is "not on whether the act is oral or physical, or on whether the act involves true or false speech,but rather on the actor's conduct and the effect that conduct has on apublic official."[10]
 {¶ 14} This court in State v. Jeter[11] recently upheld a conviction for obstructing where the defendant yelled a warning — a true statement — to potential prostitution customers during a sting operation. AsJeters demonstrates, truthful speech is sufficient to satisfy the "act" element of the statute. The question is whether the "act" was done for the purpose of impeding an officer in the performance of his duty.
 {¶ 15} "The purpose with which a person does an act is determined from the manner in which it is done, the means used, and all the other facts and circumstances in evidence."[12] Thus, although the act requirement is easily met, the nature of a defendant's conduct must be such that a trier of fact can reasonably infer that the accused intended his conduct to obstruct official business. Where a defendant intentionally makes false statements to a public official, purpose to obstruct is easily inferred.[13] Where a defendant's conduct is limited to truthful speech, one cannot reasonably infer intent to obstruct official business unless the circumstantial evidence clearly demonstrates such intent.[14]
 {¶ 16} We recognize that not every act that can conceivably be said to hinder a police officer rises to the level of criminal conduct. This court in State v. Stayton[15] stated that "[a]lthough entitled to full respect of the badge and uniform in the execution of his or her duty, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement. Interference with the police by citizens must * * * be necessarily viewed as a continuum along which, at a certain point, the line is crossed. The crossing point must involve some form of conduct beyond mere argument."[16]
 {¶ 17} Payne's conduct, which the magistrate found to be limited to arguing with the police officers, did not rise to the level from which the requisite intent could be inferred. Further, the facts and circumstances surrounding Payne's conduct were similarly insufficient: no reasonable trier of fact could have concluded that Payne intended to hamper or impede the investigation, even viewing the evidence in a light most favorable to the prosecution.
 {¶ 18} In sum, the state failed to prove that Payne acted with intent to hamper or impede the investigation when he argued with the officers. Therefore, we sustain the assignment of error, reverse the judgment of the trial court, and discharge Payne.
Judgment reversed and appellant discharged.
Gorman, P.J., and Sundermann, J., concur.
[1] State v. Golston, 71 Ohio St.3d 224, 226, 1994-Ohio-109,643 N.E.2d 109 (citing State v. Wilson [1975], 41 Ohio St.2d 236,325 N.E.2d 236; and State v. Berndt [1987], 29 Ohio St.3d 3,504 N.E.2d 712).
[2] See In re M.K., 9th Dist. No. 22173, 2005-Ohio-263, at ¶ 5.
[3] See State v. Benson (1986), 29 Ohio App.3d 109, 109,504 N.E.2d 77.
[4] State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
[5] Id.
[6] See State v. Collins (1993), 88 Ohio App.3d 291, 294,623 N.E.2d 1269, overruled in part on other grounds in State v. Tolliver
(Dec. 13, 1996), 2nd Dist. No. 15184.
[7] State v. Lazzaro (1996), 76 Ohio St.3d 261, 266, 1996-Ohio-397,667 N.E.2d 384.
[8] (1996), 108 Ohio App.3d 663, 671 N.E.2d 594.
[9] (Apr. 21, 2000), 4th Dist. No. 99CA25.
[10] Id. (emphasis added).
[11] 1st Dist. No. C-040572, 2005-Ohio-1872.
[12] State v. Hardin (1984), 16 Ohio App.3d 243, 245,475 N.E.2d 483.
[13] See Lazzaro, supra.
[14] See Jeter, supra; see, also, State v. Cooper, 151 Ohio App.3d 790,2003-Ohio-1032, 786 N.E.2d 88.
[15] 126 Ohio App.3d 158, 709 N.E.2d 1224.
[16] Id. at 164.