[Cite as *State v. Kelley*, 2014-Ohio-5565.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140112 |
| | | TRIAL NO. B-1302344 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| JOHN KELLEY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed and Cause Remanded

Date of Judgment Entry on Appeal:  December 19, 2014

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Schuh & Goldberg, LLP*, and *Brian T. Goldberg*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}     John Kelley was convicted of two counts of attempted murder following a shooting at a Sharonville motel.  The victims were Mr. Kelley's old girlfriend and her new boyfriend.

{¶2}     In this appeal, Mr. Kelley contends the trial court erred by admitting evidence of prior acts of domestic violence he committed against his ex-girlfriend, by permitting the jury to consider audiotapes of the boyfriend's interviews with police officers as well as the boyfriend's prior written statement, and by speaking to the jury outside the presence of the parties.  He also argues that his convictions were against the weight and sufficiency of the evidence.

{¶3}     We agree that the trial court erred in admitting evidence of Mr. Kelley's prior bad acts and portions of the out-of-court statements.  But after considering the impact of the erroneously admitted evidence and the strength of the other evidence against Mr. Kelley, we conclude that these errors were harmless.  The trial court's ex parte discussion with the jury was also harmless.  Finally, Mr. Kelley's convictions were not against the weight and sufficiency of the evidence.  We therefore affirm the judgment.

### I. Background

{¶4}     On the morning of April 12, 2013, Shaudrell Foshee and her boyfriend, Eric Davis, were returning to the Travelodge Motel in Sharonville following a night at work. Ms. Foshee had been living at the hotel for about a month. Ms. Foshee arrived at the door of the hotel first and encountered an armed man whom she later identified as Mr. Kelley.

2

{¶5}    Almost immediately, the man fired at Mr. Davis.  A shot struck Mr. Davis in the elbow as he raised his arm to protect himself.  Mr. Davis escaped the shooter by running through nearby bushes to a U.P.S. store.  Next, the shooter came after Ms. Foshee, who was not as fortunate.  She was shot in her back as she tried to run away and then in her shoulder.  A third shot, aimed at Ms. Foshee's head, was deflected by her wrist.

{¶6}    A hotel employee, Shelia Myrick, came to Ms. Foshee's aid and called 911.  Ms. Myrick testified that when she asked Ms. Foshee if she was okay, Ms. Foshee responded, "John Kelley shot me."  Ms. Myrick stayed with Ms. Foshee until medical help arrived.  In the days following the shooting, Ms. Myrick saw television reports about the shooting during which photographs of Mr. Kelley were shown.  Ms. Myrick recognized Mr. Kelley as a man who had been in the hotel lobby perhaps a week prior to the shooting.  She also identified a photograph of a red truck that she had seen in the hotel parking lot at least two times.

{¶7}    Officers Raymond Hugentobler and Aaron Hayes responded to the hotel. As Officer Hayes tended to Ms. Foshee, she again stated that John Kelley had shot her. She also told Officer Hayes that Mr. Kelley drove a red truck.

{¶8}    While the police officers were responding to the report of the shooting at the Travelodge, a second report was broadcast over the police radio about a shooting victim at a nearby U.P.S. store.  Officer Deanna Smith responded to that report and found Mr. Davis.  Mr. Davis told Officer Smith that he had been shot at the Travelodge by a man named Drew, who was the father of his girlfriend's child.  Mr. Davis also stated that Drew drove a red truck.

{¶9}    Hours after the shooting, a passerby called police to report an abandoned truck that matched the description of Mr. Kelley's truck.  Police officers

found a toy license plate that said "Drew" on the truck's dashboard and an empty DVD case with five bullets. The truck was registered to Mary Kelley, Mr. Kelley's mother. A month after the shooting, Mr. Kelley was found in Georgia and extradited to Ohio.

{¶10} Mr. Kelley was Ms. Foshee's ex-boyfriend and the father of her son. At trial, over the objections of defense counsel, Ms. Foshee told the jury about her relationship with Mr. Kelley, including at least six episodes in which he had harmed her. According to Ms. Foshee, Mr. Kelley was often called by his middle name, "Drew."

{¶11} The jury found Mr. Kelley guilty of two counts of attempted murder with firearm specifications and four counts of felonious assault with firearm specifications. The trial court merged the felonious-assault counts with the attempted-murder counts and sentenced Mr. Kelley accordingly.

## II. Evidentiary Issues

{¶1} Mr. Kelley's first two assignments of error challenge some of the court's evidentiary decisions. In his first assignment of error, Mr. Kelley contends that the trial court erred in admitting improper other-acts evidence. Specifically, he challenges the introduction of testimony relating to his prior acts of violence against Ms. Foshee.

{¶2} In the second, he asserts that the court erred when it allowed the jury to consider Mr. Davis's prior statements made to police officers. He contends that when the court required his counsel to play two interviews that Mr. Davis had with the police and allowed Mr. Davis to read his entire written statement aloud to the jury, inadmissible other-acts evidence and hearsay evidence were improperly admitted. We conclude that the court erred in its handling of the evidence but that the errors were harmless.

4

### A. The Court Erred When It Allowed Other-Acts Evidence

{¶3}     "A hallmark of the American criminal justice system is the principle that proof that the accused committed a crime other than the one for which he is on trial is not admissible when its sole purpose is to show the accused's propensity or inclination to commit crime." *State v. Curry*, 43 Ohio St.2d 66, 68, 330 N.E.2d 720 (1975).   Thus, Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."   *See* R.C. 2945.59.   Evid.R. 404(B) and R.C. 2945.59 are strictly construed against admissibility.   *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994). We review the trial court's decision to admit other-acts evidence for an abuse of discretion.   *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, syllabus.   We conclude that the court abused its discretion.

{¶4}     The state maintains that Ms. Foshee's testimony about Mr. Kelley's prior violent acts was admissible as proof of his identity as the shooter and as proof of his motive for the crime.

{¶5}     Other-acts evidence may be admissible when the identity of the perpetrator of a crime is at issue.   "[E]vidence of a scheme, plan, or system" may permissibly be introduced as evidence of identity "either because the other act is part and parcel of the plan to commit the charged crime or because the other act is so similar to the crime charged and sufficiently idiosyncratic that it tends to prove the same person committed both acts." *State v. Morris*, 9th Dist. Medina No. 09CA0022-M, 2012-Ohio-6151, ¶ 18, *aff'd,* Slip Opinion No. 2014-Ohio-5052.   *See State v. Lowe*, *supra*.   For example, testimony about a defendant's illegal purchase of a gun may be admissible

identity evidence in a case alleging a shooting. The gun purchase is part of the plan to carry out the shooting. Likewise, a defendant's past use of a hammer to break windows in "smash and grab" burglaries might be admissible identity evidence in a case about a similar burglary on the theory that it establishes a distinct modus operandi.

{¶6}     Here, the defense did try to make identity an issue. Counsel emphasized the absence of physical evidence connecting Mr. Kelley to the crime and questioned whether Ms. Foshee had indeed been able to name him as the shooter, in light of her serious wounds. But the previous acts of violence about which Ms. Foshee testified—ending with an incident in March 2013—were not "part and parcel" of the shooting at the hotel. Nor were the previous acts "sufficiently idiosyncratic" to tend to prove Mr. Kelley was the shooter. Most of the incidents involved Mr. Kelley allegedly hitting Ms. Foshee. Only one apparently involved a gun, and that gun was not fired but used as a threat to keep Ms. Foshee from leaving. None of the prior incidents indicate a modus operandi that would identify Mr. Kelley as the shooter.

{¶7}     To establish motive, other-acts evidence "should demonstrate that the accused possesses a specific reason to commit the crime alleged." *See State v. Johnson*, 2d Dist. Montgomery No. 23508, 2011-Ohio-1133, ¶ 55. Ms. Foshee testified about a litany of violent acts beginning in 2007 and ending in March 2013, when she obtained a protection order against Mr. Kelley. She described in detail four different episodes in which Mr. Kelley injured her. She was unable to provide specifics about two other incidents in which she had called police officers to report domestic violence by Mr. Kelley. A history of escalating violence by Mr. Kelley did not provide a motive for his actions at the Travelodge. Arguably, the most recent incident in March 2013, where Mr. Kelley allegedly choked Ms. Foshee because he thought she was pregnant with Mr. Davis's child, suggesting a possible motive for the shootings—to stop Ms. Foshee's

relationship with Mr. Davis. But there was no indication that the other prior acts of violence that Mr. Kelley allegedly perpetrated created a reason for him to shoot Ms. Foshee and Mr. Davis at the Travelodge on April 13.

{¶8} A court abuses its discretion when it acts unreasonably, arbitrarily or unconscionably. *See State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). "If the court's exercise of its discretion, however, exhibited a sound reasoning process that supported its decision, this court will not disturb that determination." *State v. Clark*, 1st Dist. Hamilton No. C-100693, 2011-Ohio-6030, ¶ 10. Here, the court's decision to allow all of Ms. Foshee's testimony about the past incidents lacked a sound reasoning process. When overruling defense counsel's motion in limine, the court stated, "With regard to the testimony, any testimony relating to domestic violence, it is very much a part of this case, because the domestic violence was against this particular victim. And when that is a case, it does show a pattern." But this demonstration of a pattern and the inference that Mr. Kelley acted in conformity with the pattern is precisely why other-acts evidence is generally inadmissible. The court therefore abused its discretion in admitting the evidence.

### B. The Trial Court Erred in Admitting Prior Statements of Mr. Davis

{¶9} Mr. Kelley argues that the court improperly allowed inadmissible other-acts evidence and hearsay evidence when it forced his counsel to play the entirety of Mr. Davis's interviews with police officers and when it allowed Mr. Davis to read his written statement aloud. We agree that the court erred.

{¶10} Mr. Davis testified that he recognized the shooter as Mr. Kelley because he had seen a picture of Mr. Kelley on Ms. Foshee's Facebook page and because he had witnessed an argument between Mr. Kelley and Ms. Foshee in January 2013. Defense counsel challenged Mr. Davis's testimony, suggesting that Mr. Davis lied during his

7

testimony about having seen Mr. Kelley's face in January. Counsel then questioned Mr. Davis about two interviews he had with Officer Mark Dudleson. When Mr. Davis stated that he couldn't remember the statements, counsel sought to play the portions of the interviews in which Mr. Davis claimed that he hadn't seen Mr. Kelley's face during the January 2013 incident because it had been too dark. Over defense counsel's objection, the trial court required that counsel play both interviews in their entirety.

{¶11}    Under Evid.R. 613(B)(2)(a), extrinsic evidence of a witness's prior inconsistent statement is admissible if the subject matter is "[a] fact that is of consequence to the determination of the action other than the credibility of the witness[.]" When part of a statement is introduced, the opposing party "may require the introduction at that time of any other part or any other writing or recorded statement which is otherwise admissible and which ought in fairness to be considered contemporaneously with it." Evid.R. 106.

{¶12}    Here, once defense counsel sought to play part of the statement that addressed whether Mr. Davis had been able to see Mr. Kelley's face in the January incident, the state was permitted to play other parts of the statement necessary to put Mr. Davis's statement in context, as long as those parts were "otherwise admissible." While it is conceivable that, in some situations, an entire recorded statement would be needed to put excerpted statements in context, this was not the case here. Combined, the interviews with Officer Dudleson lasted 25 to 30 minutes. The first interview did not mention the January incident at all. In the second interview, Mr. Davis mentioned the January incident and stated that he was unable to see Mr. Kelley's face that night. This was the impeachment evidence that defense counsel sought to elicit. But the rest of the interview went into other subjects, including allegations of Mr. Kelley's prior acts of violence against Ms. Foshee.

{¶13}   Fairness did not require admission of the bulk of the statements, which did not add context to the question of whether Mr. Davis could identify Mr. Kelley. More significantly, the statements were not "otherwise admissible." Rather, they contained inadmissible other-acts evidence, and the court erred when it allowed them to be played to the jury.

{¶14}   Mr. Kelley also objects to the trial court's decision to allow Mr. Davis to read aloud the written statement he gave to police. Defense counsel questioned Mr. Davis about whether, when he first saw Mr. Kelley at the hotel, he thought he was going to fight him. To refresh his memory, counsel allowed him to read a signed statement that Mr. Davis had provided to police officers. During redirect examination, the state asked Mr. Davis to read the entire signed statement aloud. Over the objection of defense counsel, the trial court allowed the statement to be read.

{¶15}   Under Evid.R. 612, if a witness uses a writing to refresh his memory, the opposing party "is * * * entitled * * * to introduce in evidence those portions which relate to the testimony of the witness." The court's decision to allow Mr. Davis to read his entire statement to the jury went beyond what is permitted by Evid.R. 612. In the statement, Mr. Davis not only addressed his impression that Mr. Kelley was at the Travelodge to fight him but also Mr. Davis's actions after he was shot, threatening text messages to Ms. Foshee from Mr. Kelley, and rumors "off the streets" that Mr. Kelley had been following Mr. Davis and Ms. Foshee for three weeks. Because these portions of the statement did not "relate to the testimony of the witness," the court erred in allowing the entire statement to be read to the jury.

### C. The Evidentiary Errors Were Harmless

{¶16}   Having concluded that the other-acts and hearsay evidence was improperly admitted, we must determine whether the errors were harmless or require

9

that we grant a new trial. The Ohio Supreme Court recently addressed the impact of improperly admitting other-acts evidence. *State v. Morris*, Slip Opinion No. 2014-Ohio-5052. "[T]he real issue when Evid.R. 404(B) evidence is improperly admitted at trial is whether a defendant has suffered any prejudice as a result." *Id.* at ¶ 25. The court provided guidance on how to ascertain whether a defendant has been prejudiced so that a new trial must be ordered:

> In determining whether to grant a new trial as a result of the erroneous admission of evidence under Evid.R. 404(B), an appellate court must consider both the impact of the offending evidence on the verdict and the strength of the remaining evidence after the tainted evidence is removed from the record.

*Id.* at syllabus.

{¶17} Although the court's decision in *Morris* addressed only improper other-acts evidence, we think its logic is equally pertinent to the hearsay evidence that was also improperly admitted here.

{¶18} Applying *Morris*, if we conclude that the improperly admitted evidence did not impact the verdict, our inquiry stops, and we must conclude the court's errors were harmless. Otherwise, we excise the improper evidence and consider whether the verdicts should stand in light of the remaining properly admitted evidence.

{¶19} We cannot conclude that the extensive testimony about Mr. Kelley's violent acts against Ms. Foshee and testimony that he had been following her and Mr. Davis did not impact the jury's verdict. The jury heard about the other-acts evidence not only during Ms. Foshee's testimony but also during playback of Mr. Davis's interviews and the reading of his statement. It is unlikely that the jury could ignore Mr. Kelley's

long history of violence against Ms. Foshee and the suggestion that he had been following the couple for weeks.

{¶20}    Because we conclude that improperly admitted other-acts evidence and hearsay evidence impacted the verdicts, we must take the next step delineated in *Morris* and consider the strength of the remaining evidence absent the offending evidence. Upon the record before us, we conclude that even without the evidence of Mr. Kelley's prior bad acts and the hearsay evidence, the evidence of his guilt was overwhelming. Ms. Foshee identified him twice as the shooter immediately after being shot.  Mr. Davis likewise identified him.  Ms. Myrick had seen Mr. Kelley at the hotel just days before the shooting.   Additionally, Ms. Foshee and Mr. Davis described the red truck that Mr. Kelley had been driving.   Phone records indicated that Mr. Kelley had fled the state shortly after the shootings and remained at large until he was located in Georgia.   We conclude that the court's evidentiary errors were harmless beyond a reasonable doubt. The first and second assignments of error are overruled.

### III.  Ex Parte Communication with Jurors

{¶21}    In his third assignment of error, Mr. Kelley asserts that the court erred by holding an ex parte discussion with the jury.  He contends that he was denied a fair trial because on the last day of the trial, the court spoke with jurors outside his presence. We conclude that ex parte communication was error, but that the error was harmless.

{¶22}    A criminal defendant has a right to be present at every stage of his trial. *See, e.g., State v. Williams*, 6 Ohio St.3d 281, 286, 452 N.E.2d 1323 (1983).  As a result, "any communication between judge and jury that takes place outside the presence of the defendant * * * is error which may warrant" a new trial.  *Bostic v. Connor*, 37 Ohio St.3d 144, 149, 524 N.E.2d 881 (1988).   Such communication is harmless unless it is prejudicial to the defendant.  *State v. Abrams*, 39 Ohio St.2d 53, 313 N.E.2d 823 (1974),

paragraph two of the syllabus. "To prevail on a claim of prejudice due to an *ex parte* communication between judge and jury, the complaining party must first produce some evidence that private contact, without full knowledge of the parties, occurred between the judge and jury which involved substantive matters." *State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1985), paragraph 13 of the syllabus. A communication is substantive when it "address[es] any legal issues, any fact in controversy, any law applicable to the case, or some similar matter." *See State v. DiPietro*, 10th Dist. Franklin No. 09AP-202, 2009-Ohio-5854, ¶ 17.

{¶23} Before testimony began on the last day of the trial, the trial court met with jurors in the jury room. The discussion was on the record, but the attorneys and Mr. Kelley were not present. The court addressed the jurors' safety:

> I just wanted to sort of, as a matter of protocol, I know this is a court of a higher level kind of—I don't know what the word for it is, more a spirited trial than some of the ones that I normally have. And I wanted to make sure that everybody is comfortable, and no one feels intimidated in any way. I do want to assure you a couple of things. The first thing is that we have plenty of security. You may not be able to see the security, but we have got everything covered, if you ever have any doubt. Trust me, it's not for your safety, it's for mine.

{¶24} The court went on to emphasize that the courtroom was safe, and then confirmed that the jurors could be fair and impartial. It is unclear what prompted the discussion, but after meeting with the jury, the trial court addressed the spectators in the courtroom and warned them:

I am going to tell you right now, to everybody, every single person in this courtroom, if you so much as blink today I am going to hold you in contempt of court.

{¶25}  Mr. Kelley maintains that the ex parte discussion tainted the jury's decision, but he does not demonstrate how he was prejudiced.  No substantive matters were addressed with the jury during the ex parte discussion, and there is nothing in the court's statements that plausibly could have impacted the verdict.   Thus, we conclude the error was harmless.   The third assignment of error is overruled.

### IV.  Sufficiency and Weight of the Evidence

{¶26}   We consider the fourth and fifth assignments of error together. In the fourth, Mr. Kelley asserts that his convictions were against the weight of the evidence, and in the fifth, he asserts that his convictions were based on insufficient evident.

{¶27}   As to the sufficiency argument, our review of the record reveals that the state adduced substantial, credible evidence from which the jury could have reasonably concluded that the state had proved beyond a reasonable doubt the elements of attempted murder.  *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And in regard to the manifest-weight argument, our review of the entire record fails to persuade us that the trial court clearly lost its way and created such a manifest miscarriage of justice that we must reverse Mr. Kelley's convictions and order a new trial. *See State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997).   Mr. Kelley contends that the testimony of Ms. Foshee and Mr. Davis was not credible.  But the jury was in the best position to determine the credibility of the witnesses.   The fourth and fifth assignments of error are overruled.

13

## V. Clerical Errors and Postrelease Control

{¶28}   The state points out two errors in the court's judgment entry.  First, the sentencing-hearing transcript demonstrates that the court merged Mr. Kelley's four felonious-assault convictions into the two attempted-murder convictions, and merged the firearm specifications into a single specification.  However, the judgment entry does not reflect these mergers.  Second, the entry states:  "[t]he total aggregate sentence is twenty four (25) years."  Our review of the proceedings and judgment entry convinces us that the correct aggregate sentence is 25 years.  The trial court may correct these clerical errors by a nunc pro tunc entry.  *See* Crim.R. 36.

{¶29}   Additionally, we note that although the sentencing entry states that Mr. Kelley was subject to five years of postrelease control, the trial court neglected to so advise him at the sentencing hearing.  *See* R.C. 2929.19(B)(2)(c) and 2967.28(B).  We remand the cause therefore so that the court may properly inform Mr. Kelley about his postrelease control.

## VI. Conclusion

{¶30}   Having considered and overruled each assignment of error, we affirm the trial court's judgment.  We remand the cause so that the court may properly inform Mr. Kelley about postrelease control and correct its sentencing entry to reflect the merger of the felonious-assault offenses and the imposition of a 25-year aggregate sentence.

Judgment affirmed and cause remanded.

**HILDEBRANDT, P.J.,** and **DINKELACKER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.