[Cite as *State v. Harrison*, 2023-Ohio-471.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220171<br>TRIAL NO. B-2103944 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | | *O P I N I O N.* |
| | : | |
| EMMANUEL HARRISON, | : | |
| Defendant-Appellant. | : | |


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: February 17, 2023


*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Lora Peters*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Judge.**

{¶1}     After victim Michell Harrison invited her husband, defendant-appellant Emmanuel Harrison, over for help with an innocuous task, an argument broke out that ultimately left her with scratches on her neck and bruises on her chest and arm.  In the wake of this incident, Mr. Harrison was indicted for domestic violence in violation of R.C. 2919.25(A), and his offense was raised to a felony of the fourth degree due to a previous conviction for domestic violence.  *See* R.C. 2919.25(D)(3).  At trial, the state presented Ms. Harrison as one of the key witnesses necessary to secure a conviction. In his sole assignment of error, Mr. Harrison protests that his conviction ran afoul of the manifest weight of the evidence, highlighting his wife's muddled testimony at trial. Based on our review of the record, however, we affirm the trial court's judgment and overrule his assignment of error.

I.

{¶2}     At 10 a.m. on July 31, 2021, Denise Rector, the property manager of Ms. Harrison's apartment building, called 911 upon discovering Mr. Harrison sleeping underneath the stairwell of the complex.[1]  Ms. Rector had advised Mr. Harrison several times before to stay off the property due to previous instances of trespassing.  Although Mr. and Ms. Harrison were married for ten years and had a daughter together, the two no longer lived together.

{¶3}     Ms. Harrison testified that she asked Mr. Harrison to come over on July 31 to help assemble their daughter's bed.  He arrived in the early evening, at

---

[1] It is important to highlight that Mr. Harrison in his brief, Ms. Harrison in her testimony, and the trial court on the record all mistakenly indicated that the 911 call from Ms. Rector occurred the morning of August 1, *after* the altercation. But as discussed below, Officer Genesis Steele clarified during her testimony, after reviewing the Computer Aided Dispatch ("CAD") report, that Ms. Rector called 911 on the morning of July 31.

least before 6 p.m., already nursing some grievances. The two proceeded to share drinks, which apparently accelerated his disquietude. After using the restroom, Mr. Harrison accused his wife of "sleeping with the whole block" and tried to initiate sex with her. After she rebuffed his advances, Mr. Harrison grabbed a knife and bent it before leaving the room again.

{¶4} Ms. Harrison then grabbed a hammer in purported self-defense. When her husband returned, he advanced on her, and in the melee, the hammer struck her, and Mr. Harrison choked her. After Ms. Harrison fought him off, he retreated to the kitchen, urinated on the floor, and left the apartment. Ms. Harrison called 911 around 6 p.m., leading to Officer Genesis Steele's arrival on the scene.

{¶5} While speaking with Ms. Harrison, Officer Steele noticed that she appeared a bit intoxicated and agitated. Officer Steele explained to Ms. Harrison that she had been made aware from other officers of a separate incident that had occurred earlier that day concerning Mr. Harrison. In her testimony, Officer Steele recalled reporting to her apartment on multiple occasions over the past couple of years due to other incidents of domestic violence, menacing, trespassing, arguments, and calls from neighbors concerning the couple.

{¶6} After Officer Steele left Ms. Harrison's residence that evening, Mr. Harrison returned, banging on the door and threatening his wife. Ms. Harrison then called 911 again at 7 p.m. When Officer Steele returned, she described Ms. Harrison as "very frantic * * * and upset." Officer Steele stepped into the apartment to see if Mr. Harrison was inside and noticed scratches and bruises on Ms. Harrison, which she photographed. Officer Steele then called Mr. Harrison by phone, requesting that he return to the apartment and explain his version of the encounter to her,

while also offering him his clothes and his medication. Officer Steele eventually induced Mr. Harrison to comply, leading to his subsequent arrest.

{¶7} Although Officer Steele provided some clarity as to the incidents that occurred on July 31, Ms. Harrison's recollection of events on the stand is admittedly confusing. To begin, she testified that Mr. Harrison was found under the stairs of her apartment complex the morning *after* he had allegedly attacked her—even though the CAD report from Ms. Rector that was offered into evidence during Officer Steele's testimony demonstrates that Ms. Rector called 911 *before* the incident between the Harrisons.

{¶8} Perhaps related to this confusion, Ms. Harrison insisted that she talked to Officer Steele at 10:30 on the morning of July 31, even though Officer Steele refuted that notion because she was not on duty during that time. When shown a video on the stand of her talking with Officer Steele, she insisted the interaction happening the following morning, even though the timestamp indicated 6 p.m. Ms. Harrison further had trouble recalling when she called 911, confusion she attributes to consuming alcohol during the relevant time period.

{¶9} In finding Mr. Harrison guilty, the trial court generally described the incident between the Harrisons based on Ms. Harrison's account, without getting mired in the confusion about the timing of the 911 calls and the interactions with Officer Steele. Because the Harrisons share a child together and because Mr. Harrison had previously been convicted of domestic violence, the trial court found Mr. Harrison guilty of domestic violence as a fourth-degree felony. Mr. Harrison now appeals, challenging the credibility of Ms. Harrison's testimony.

II.

**{¶10}** In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). In other words, we review the evidence, the credibility of witnesses, and the entire record. *Id.* But we will only reverse if the trial court " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶11}** And "it is well settled law that matters as to the credibility of witnesses are for the trier of fact to resolve." *State v. Ham*, 1st Dist. Hamilton No. C-170043, 2017-Ohio-9189, ¶ 21. " 'When conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' " *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29, quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

**{¶12}** Ms. Harrison's testimony certainly creates some confusion, but only as it relates to the times when she interacted with the police, not as it pertains to Mr. Harrison harming her. In fact, Mr. Harrison fails to challenge his wife's testimony related to her injuries, nor does he point to any sort of conflicting testimony or evidence. Furthermore, Officer Steele's testimony aptly provided clarity to Ms. Harrison's jumbled timeline. Not only did Officer Steele clarify how the incident occurred on July 31 consistent with the CAD reports, Officer Steele's previous interactions with the Harrisons strengthened Ms. Harrison's account: "I think that maybe Ms. Harrison was confused. I do know them very well. I know that they have

5

occasion to partake in alcohol and drugs, and sometimes that can kind of distort people's memories or, you know, times and locations and stuff like that. * * * But she was also frantic about what happened. And you know, in a domestic violence situation, I can understand that, you know."

{¶13} We take note that "[e]ven if * * * the witness[] admitted to being intoxicated, for the purposes of our manifest weight of the evidence review, a witness's intoxication in and of itself is not a sufficient basis to completely undermine his or her testimony absent something in the record demonstrating that the intoxication rendered the witness incapable of accurately recalling the events." *State v. Melton*, 8th Dist. Cuyahoga No. 103341, 2016-Ohio-1227, ¶ 7. "Thus, while intoxication is a factor informing the credibility determination, it does not render the witness's testimony per se incredible." *Id.* Even though Ms. Harrison's intoxication may have caused her to confuse some of the details of the night in question, she was able to accurately recall the most important event on the night of July 31: Mr. Harrison's violence towards her.

{¶14} And a conviction for domestic violence does not require the state to demonstrate when an incident occurred to the hour or when the victim notified the police about the incident. *See* R.C. 2919.25(A). Coupled with Officer Steele's testimony, the trial court chose to believe Ms. Harrison as it related to the most essential sequence of events leading to Mr. Harrison harming her. We see nothing in the record that would cause us to question that credibility determination, nor did the trial court "los[e] its way" in finding that Mr. Harrison harmed Ms. Harrison. *See Thompkins*, 78 Ohio St.3d 380 at 387, 678 N.E.2d 541.

\* \* \*

**{¶15}** In light of the foregoing analysis, we overrule Mr. Harrison's assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **WINKLER, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.