[Cite as *State v. Flantoill*, 2024-Ohio-5224.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                       :       APPEAL NO.   C-240120

                                          TRIAL NO.    22/CRB/1729

      Plaintiff-Appellant,       :

vs.                             :

                                          *O P I N I O N*

BRANDY FLANTOILL,         :

      Defendant-Appellee.      :

Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Reversed and Cause Remanded

Date of Judgment Entry on Appeal: November 1, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Joseph Cossins*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellee.

**BERGERON, Presiding Judge.**

{¶1} After an argument grew heated, police were summoned to a residence where a wife was allegedly holding her husband at gunpoint. Upon further investigation and a struggle with police, the wife, defendant-appellee Brandy Flantoill, was arrested and charged with resisting arrest, along with two ancillary charges related to the confrontation with her husband. The husband—the lone prosecuting witness— refused to participate in her prosecution related to the altercation, resulting in the dismissal of the two ancillary charges. Those dismissals prompted the wife to move for dismissal of the final charge of resisting arrest due to the State's lack of evidence (assuming the exclusion of evidence related to the husband's allegations). The trial court granted the motion, but it did so seemingly on the merits after reviewing the body-worn camera footage of the arrest. The State accordingly appeals, presenting one assignment of error arguing that the trial court improperly weighed each party's respective evidence in ruling on the motion to dismiss. After reviewing the record, we ultimately agree. Therefore, we reverse the judgment of the trial court and remand this cause for further proceedings.

I.

{¶2} In February 2022, the victim, H.B., initially called 9-1-1 reporting an argument between he and his wife, Ms. Flantoill, in their residence over the whereabouts of some of her belongings. He subsequently reported that Ms. Flantoill obtained his firearm and threatened him with it. During the call, however, H.B. shared that the firearm had not been removed from the holster and that he did not believe that Ms. Flantoill even knew how to do so. Not to be outdone, Ms. Flantoill also called 9-1-1, ostensibly to diffuse the situation by explaining her side of the story.

{¶3} Prompted by these calls, several officers arrived at the residence under

the impression that H.B. was being held at gunpoint by his wife. While the record remains unclear as to exactly how many officers arrived on the scene, one officer recalled approximately eight responding officers. When they arrived, they first encountered H.B. and his dog in the stairwell of the residence building, where they began discussing the events that took place that precipitated the 9-1-1 call. H.B. later asserted that he never told the officers that he feared his wife or feared that she might utilize the firearm against him. He also made sure that the officers knew that Ms. Flantoill had not removed the firearm from its holster and that he did not believe she knew how to do so.

{¶4} Despite H.B.'s relative calm demeanor at the scene, the officers still understandably treated the situation as serious due to the alleged involvement of a firearm. The officers then demanded that Ms. Flantoill open the door to the couple's residence because police protocol required that she be detained at least until the officers could finish their on-site investigation. She responded that she was attempting to secure the barking dogs inside the residence before she opened the door. But she took too long, so the officers attempted to open the door themselves and when they could not do so, they threatened to break down the door. Ms. Flantoill immediately threw open the door, only to witness various officers pointing their firearms at her. At that point, she only wore an untied bathrobe with a t-shirt and underwear underneath.

{¶5} Per protocol, the officers immediately attempted to place her in handcuffs. This is where the individual accounts of the story diverge. Ms. Flantoill alleges that she was immediately restrained, placed in handcuffs, and taken to the ground by the eight officers, all while she pleaded with them to stop because they were hurting her. But the officers maintained in the complaint that she refused their

3

instructions to put her hands behind her back several times, prompting officers to "go hands on with" her while she continued to resist.

**{¶6}** Based on the events that occurred, Ms. Flantoill was charged with resisting arrest under R.C. 2921.33(A), domestic violence under R.C. 2912.25(C), and aggravated menacing under R.C. 2903.21. However, as mentioned above, after H.B. refused to participate in the prosecution of the case, the trial court dismissed the latter two charges for want of prosecution. That left only the resisting arrest charge remaining, and that is where the issues for this appeal began.

**{¶7}** After the dismissal of the two other charges, Ms. Flantoill moved to dismiss her third and final charge of resisting arrest, maintaining that any statements made by H.B. constituted inadmissible hearsay (based on his refusal to testify) and any offer of those statements into evidence would otherwise violate her constitutional right to confront witnesses against her. She alternatively argued that H.B.'s statements were unduly prejudicial and represented inadmissible "other acts" evidence. Ultimately, Ms. Flantoill concluded that if the trial court held that H.B.'s statements were inadmissible, the State would be unable to meet their burden of proof for the elements of resisting arrest.

**{¶8}** The trial court convened a hearing on the matter, giving both parties the opportunity to present their arguments. However, after taking the issue under advisement, the trial court dismissed the charge, but not for any of the reasons advanced by Ms. Flantoill. After reviewing the body-worn camera footage from the arrest, the trial court determined that she was not resisting arrest when a slew of officers surrounded her outside her residence. Instead, the judge concluded, she simply desired to close her robe in order to refrain from exposing herself once her hands were behind her back, as any woman in society would want to do. Importantly,

4

in light of that conclusion, the trial court held that the State failed to carry its burden as it pertained to the elements of the offense, and it dismissed the charge under Crim.R. 48(B), which gives the court power to dismiss a complaint over the State's objections.

**{¶9}** The State now appeals the trial court's dismissal of Ms. Flantoill's charge of resisting arrest, asserting one assignment of error. The State argues that the trial court committed plain error when it dismissed the charge because it peered beyond the allegations in the complaint and began weighing the evidence, an act reserved for trial. We agree with the State's argument, and accordingly, we reverse the trial court's dismissal and remand this cause for further proceedings.

II.

**{¶10}** Typically, appellate courts review a trial court's dismissal of a complaint under an abuse of discretion standard. *State v. Troisi*, 2022-Ohio-3582, ¶ 17, citing *State v. Keenan*, 2015-Ohio-2484, ¶ 7. However, if the appellant fails to raise an objection on an issue that they subsequently appeal, "Crim.R. 52(B) provides a mechanism by which parties may obtain review of 'plain errors' that affected 'substantial rights' even where they failed to object . . . ." *State v. Shahin*, 2024-Ohio-456, ¶ 7 (8th Dist.).

**{¶11}** Here, the State failed to object to the charge's dismissal (although, in the State's defense, the trial court dismissed this action on grounds not requested by the defendant). Therefore, we will review this issue for plain error. In order to satisfy the plain error standard, the appellant must show (1) there was an error (a deviation from the legal rule), (2) the error must be obvious under current law, and (3) in order to affect substantial rights as required, "the trial court's error must have affected the outcome of the trial." *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002); *see Shahin* at ¶ 7,

citing *State v. Sanders*, 92 Ohio St.3d 245, 263 (2001) ("'Plain error' exists only when it is clear that the result would have been otherwise but for the error."); *see also State v. Smith*, 2019-Ohio-5264, ¶ 33 (1st Dist.).

**{¶12}** In deciding whether to grant or deny a motion to dismiss under Crim.R. 48(B), the trial court may only look at the "'legal sufficiency of the indictment without regard to the quantity or quality of evidence that may be produced by either [party].'" *State v. Cunningham*, 2024-Ohio-2032, ¶ 52 (10th Dist.), quoting *State v. Parr*, 2019-Ohio-4011, ¶ 11 (10th Dist.); *see State v. Patterson*, 63 Ohio App.3d 91, 95 (2d Dist. 1989). The real inquiry concerns whether the indictment is valid on its face, and courts have upheld a trial court's denial of a motion to dismiss when the indictment clearly alleged acts that fulfilled each element of the crime charged. *See id.* at ¶ 53; *see also State v. Sanchez*, 2023-Ohio-1436, ¶ 21 (3d Dist.), quoting *State v. Egler*, 2008-Ohio-4053, ¶ 14 (3d Dist.). Trial courts may not grant a pretrial motion to dismiss when it "requires an examination of evidence." *Sanchez* at ¶ 23, citing *State v. Varner*, 81 Ohio App.3d 85 (9th Dist. 1991); *see also State v. Nihiser*, 2004-Ohio-4067, ¶ 10 (4th Dist.) (holding that defendant's motion to dismiss required the trial court to "consider evidence and testimony" regarding each party's position and the weight and sufficiency of that evidence, rather than the sufficiency of the allegations in the complaint, which the trial court should not undertake pretrial).

**{¶13}** Here, the complaint filed by the State alleged that Ms. Flantoill was asked repeatedly to put her hands behind her back, she refused, the officers had to "go hands on," and she still resisted. Under R.C. 2921.33(A), "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." The allegations of the complaint, if true, readily satisfy the elements of the offense.

**{¶14}** However, as the trial court admitted in its oral decision, it looked

6

beyond the complaint and reviewed the body-worn camera footage of the arrest. It found that Ms. Flantoill only desired to cover herself up so as to avoid exposure. In doing so, the trial court considered each side's evidence and began evaluating the strength of that evidence. It found that the idea that Ms. Flantoill simply wanted to cover herself more credible than the State's contention that she resisted arrest.[1] This almost strikes us as a summary-judgment-type analysis that has no home in the criminal motion to dismiss standard under Crim.R. 48(B). Therefore, the first two prongs of the plain error analysis are met.

{¶15} Lastly, "'[t]he state has substantial rights to have a criminal trial conducted according to proper procedure as established by the Criminal Rules, the United States Constitution, and Ohio Constitution, and applicable provisions of the Ohio Revised Code.'" *State v. Lindsey*, 2009-Ohio-4124, ¶ 27 (2d Dist.), quoting *State v. Richter*, 92 Ohio App.3d 395, 399 (6th Dist. 1993). When the trial court here dismissed Ms. Flantoill's charge of resisting arrest, it directly deprived the State of the ability to have a trial on the matter. Therefore, the trial court's decision affected the State's substantial rights in a manner that impacted the outcome of the proceedings.

{¶16} For those reasons, we sustain the State's sole assignment of error.

III.

{¶17} Based on the foregoing analysis, we reverse the judgment of the trial court and remand this cause for further proceedings.

Judgment reversed and cause remanded.

**CROUSE** and **WINKLER, JJ.,** concur.

---

[1] To be clear, we take no position on the ultimate merits of the dispute, as that is reserved for the finder of fact.

Please note:

The court has recorded its entry on the date of the release of this opinion.