[Cite as *State v. Harris*, 2025-Ohio-444.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240266 |
| | | TRIAL NOS. C/23/CRB/19513B |
| Plaintiff-Appellee, | : | C/23/CRB/19513C |
| vs. | : | |
| BRIAN HARRIS, | : | *O P I N I O N* |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: February 12, 2025

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *David Hoffman*, Assistant Public Defender, for Defendant-Appellant.

CROUSE, Judge.

**{¶1}** Defendant-appellant Brian Harris appeals from the trial court's judgments convicting him, following a jury trial, of obstructing official business and resisting arrest. In three assignments of error, Harris argues that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, that the trial court's unnecessary delay in charging the jury violated R.C. 2945.10, and that the trial court erred in communicating with the jury outside of Harris's presence.

**{¶2}** Following our review of the record, we hold that (1) Harris's convictions were supported by sufficient evidence and were not against the manifest weight of the evidence, (2) the trial court delayed in charging the jury in violation of R.C. 2945.10, but Harris suffered no material prejudice as a result thereof, and (3) the record does not affirmatively demonstrate that Harris was not present for the trial court's communication with the jury. We accordingly overrule Harris's assignments of error and affirm the trial court's judgments.

## I.    *Factual and Procedural History*

**{¶3}** Complaints were filed in the Hamilton County Municipal Court charging Harris with criminal trespass, obstructing official business, and resisting arrest. All three charges concerned an incident that occurred at the Mi Cozumel restaurant in Springfield Township on November 9, 2023.

**{¶4}** The evidence presented at trial established that Springfield Township Police Sergeant DeShawn Brooks received a call from an off-duty officer who was at Mi Cozumel. The off-duty officer reported that a patron of the restaurant was refusing to leave. At the time Sergeant Brooks received the call, he was passing by the restaurant in his car. He immediately pulled into the restaurant's parking lot and

radioed for assistance. When Sergeant Brooks entered the restaurant, Harris was standing with a restaurant employee near the entrance. According to both Sergeant Brooks and Springfield Township Police Officer Bradley Williams, who had responded to Sergeant Brooks's call for assistance, Harris exhibited a "death stare" towards both the restaurant employee and the responding officers.

{¶5} Harris's hands were in his pockets, and he refused to remove them when requested to do so by the officers. He also refused to respond to any questions asked of him. Given Harris's demeanor, including his glare and his refusal to speak or to remove his hands from his pockets, which the officers' testimony established was a location where a weapon would normally be stored, the officers suspected that Harris may have been armed. Sergeant Brooks informed Harris that he was going to pat Harris down for weapons. He moved in to do so, with assistance from Officer Williams and Springfield Township Police Officer Johnson, who had also responded to the scene. As soon as the officers touched Harris, he began to physically resist and pull away.

{¶6} During the scuffle, Officer Johnson's glasses were knocked off, Officer Williams was elbowed in the face, and a magazine for Officer Williams's weapon was knocked loose from the pouch in which it had been stored. After a brief struggle, the officers were able to place handcuffs on Harris. Harris continued to struggle as the officers walked him outside to a police cruiser and attempted to place him inside. Harris twisted and jerked wildly and braced both of his feet on either side of the cruiser's door.

{¶7} Testimony was elicited from Sergeant Brooks on both cross-examination and redirect examination regarding the timing of this incident as

3

reflected in the CAD[1] report. Sergeant Brooks explained that a CAD report is initiated when a 911 call is placed. In this case, the initial call he received from the off-duty officer at Mi Cozumel did not trigger the report. Rather, Sergeant Brooks testified that the report was initiated when he placed the call for assistance. While the CAD report was never admitted into evidence, Sergeant Brooks agreed with defense counsel that the report reflected that the incident began at 20:39 and that Harris was taken into custody at 20:40. No further testimony or evidence was elicited as to whether the timing as reflected in the CAD report was accurate.

{¶8}    During the jury's deliberations, it asked to view the CAD report, but was told that the report had not been entered into evidence. The jury subsequently returned verdicts finding Harris guilty of obstructing official business and resisting arrest but not guilty of criminal trespass. For each offense, the trial court sentenced Harris to one day in jail, while crediting him with one day for time served. The trial court also remitted fines and costs. Harris now appeals.

## II.    Sufficiency and Weight of the Evidence

{¶9}    In his first assignment of error, Harris argues that his convictions for obstructing official business and resisting arrest were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶10} In reviewing the sufficiency of the evidence, we must determine whether, "after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Cleaned up.) *State v. Walker*, 2016-Ohio-8295, ¶ 12. In contrast, when this court reviews a challenge to the manifest weight of the evidence, it

---

[1] CAD stands for Computer Aided Dispatch. *See State v. Harrison*, 2023-Ohio-471, ¶ 1, fn. 1 (1st Dist.).

must "review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice." *State v. Powell*, 2020-Ohio-4283, ¶ 16 (1st Dist.), citing *State v. Thompkins*, 1997-Ohio-52, ¶ 25.

{¶11} We first address the sufficiency of the evidence supporting Harris's conviction for obstructing official business. Harris was found guilty of obstructing official business in violation of R.C. 2921.31(A). To support a conviction under this statute, the State had to prove that Harris "'(1) performed an act; (2) without privilege; (3) with purpose to prevent, obstruct, or delay the performance of a public official of any authorized act within the public official's official capacity; and (4) that hampered or impeded the performance of the public official's duties.'" *State v. Buttram*, 2020-Ohio-2709, ¶ 10 (1st Dist.), quoting *In re Payne*, 2005-Ohio-4849, ¶ 11 (1st Dist.).

{¶12} Harris's challenges to the sufficiency of the evidence concern the second and third elements that the State was required to prove. He argues that the State failed to prove both that he acted without privilege and that the officers were engaged in an authorized act when they attempted to pat him down for weapons. He contends that the officers lacked a reasonable suspicion that he was armed and had no authority to conduct a pat-down search of his person. As a result of this lack of authority, he contends, his resistance to the illegal search was privileged. Harris makes no argument with respect to the remaining elements necessary to establish the offense of obstructing official business—he does not challenge the fact that he "performed an act" or that his actions hampered or impeded the officers in the execution of their public duties. *See id.*

{¶13} Where an officer is justified in a belief or has a reasonable suspicion "that an individual may be 'armed and presently dangerous,'" the officer may conduct

5

a "limited protective search" for a concealed weapon. *State v. Hairston*, 2019-Ohio-1622, ¶ 9, quoting *Terry v. Ohio*, 392 U.S. 1, 24 (1968); *State v. Henson*, 2022-Ohio-1571, ¶ 15 (1st Dist.).[2] A determination as to whether an officer had reasonable suspicion to conduct such a limited search "must be based on the totality of circumstances 'viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.'" *Hairston* at ¶ 10, quoting *State v. Andrews*, 57 Ohio St.3d 86, 87-88 (1991). "Officers are entitled to draw on their own experiences and specialized training to make inferences from and deductions about the presenting information." *State v. Rogers*, 2022-Ohio-4535, ¶ 24 (1st Dist.).

**{¶14}** Here, Sergeant Brooks responded to the restaurant after receiving a call that a patron would not leave. Harris looked at the officers and at the restaurant employee with a "death stare," would not answer questions, and refused to remove his hands from his pockets when asked to do so. Testimony established that Harris's refusal to remove his hands from his pockets was particularly concerning because pockets are a common place for a weapon to be stored. The officers were entitled, based on their training and experience, to infer from Harris's refusal to remove his hands from his pockets that he may have been armed. *See State v. Britton*, 1991 Ohio App. LEXIS 1842, *6-7 (8th Dist. Apr. 25, 1991), quoting *State v. Bobo*, 37 Ohio St.3d 177 (1988), paragraph two of the syllabus ("the refusal of the appellant to completely withdraw his hands from his jacket pockets warranted a belief that the appellant was

---

[2] Such limited protective searches may occur after an individual has been seized for a "brief investigative stop" based upon "reasonable suspicion . . . that criminal behavior has occurred or is imminent." *Hairston* at ¶ 9. This is so, even if "the stop and the pat-down search occur[] simultaneously." *Henson* at ¶ 18. Here, however, Harris argues only that the officer lacked reasonable articulable suspicion to believe Harris was armed and so could not justify his *search*. Harris does not challenge, and we do not address, whether the officer also had reasonable suspicion of imminent or contemporaneous criminal conduct that would justify the brief, investigative *seizure*.

armed and dangerous thus necessitating the limited 'protective search' of the appellant"); *compare State v. Showes*, 2020-Ohio-650, ¶ 15 (1st Dist.) (declining to give any weight to the fact that defendant's hands were in his pocket where there was no testimony that the officer's "experience and training led him to believe that one's hands in the pockets is indicative of the presence of a weapon" or that the defendant was asked to remove his hands).

{¶15} Under the totality of these circumstances, the officers had a reasonable suspicion that Harris may have possessed a weapon and were justified in conducting a pat-down search. *See Hairston*, 2019-Ohio-1622, at ¶ 9-10. Thus, their actions were authorized. Further, the only privilege Harris asserts is the privilege to resist an unlawful search. However, because the officers were legally and constitutionally authorized to pat Harris down, Harris's acts of resistance and refusal to cooperate could not have been privileged on that basis.

{¶16} The evidence presented at trial established that when the officers attempted to conduct a pat-down search of Harris, he refused to comply. Harris, without privilege to do so, physically resisted and moved his body to prevent the officers from conducting the pat down. As he resisted, he elbowed Officer Williams in the face and impeded the officers from carrying out their search. Viewed in the light most favorable to the State, this evidence was sufficient to prove the elements of obstructing official business beyond a reasonable doubt. *See Walker,* 2016-Ohio-8295, at ¶ 12.

{¶17} Harris was also found guilty of resisting arrest in violation of R.C. 2921.33(A), which provides that "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Harris argues that his conviction for resisting arrest was not supported by sufficient evidence because he had

not committed the offense of obstructing official business, and the arrest was not lawful. Harris's contention relies on his argument, which we have already rejected, that the officers lacked a reasonable suspicion to conduct a pat-down search.

**{¶18}** "A lawful arrest is that which is supported by probable cause or a reasonable belief that the offense in question occurred." *State v. Cooper*, 2024-Ohio-3081, ¶ 17 (1st Dist.). As established, the officers had a reasonable suspicion that Harris was armed and were justified in conducting a limited pat-down search. When Harris struggled with the officers and attempted to evade the search, he committed the offense of obstructing official business. Accordingly, the officers had a reasonable belief that the offense of obstructing official business had occurred, and Harris's arrest for that offense was lawful.

**{¶19}** The State also presented sufficient evidence that Harris interfered with that lawful arrest. The evidence presented at trial established that Harris struggled with the officers as they walked him out of the restaurant, and that he placed both feet on either side of the door to a police cruiser to prevent himself from being placed inside. Viewed in the light most favorable to the State, this evidence was sufficient to prove the offense of resisting arrest beyond a reasonable doubt. *See Walker*, 2016-Ohio-8295, at ¶ 12.

**{¶20}** We further hold that Harris's convictions for obstructing official business and resisting arrest were not against the manifest weight of the evidence. As the trier of fact, the jury was in the best position to judge the credibility of the witnesses. *State v. Shepard*, 2021-Ohio-964, ¶ 62 (1st Dist.); *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. It was entitled to believe the officers' testimony that they feared Harris may have been armed and that it was necessary to conduct a pat-down search, as well to believe the officers' description of Harris's

behavior in response to that search and to being placed in the police cruiser. This was not the rare case in which the jury lost its way and committed a manifest miscarriage of justice in finding Harris guilty. *See Powell*, 2020-Ohio-4283, at ¶ 16 (1st Dist.).

**{¶21}** The first assignment of error is accordingly overruled.

### III. *Order and Timing of Proceedings (R.C. 2945.10)*

**{¶22}** In his second assignment of error Harris argues that the trial court engaged in an unnecessary delay when charging the jury in violation of R.C. 2945.10.

**{¶23}** R.C. 2945.10(G) provides in relevant part that "[t]he court, after the argument is concluded and before proceeding with other business, shall forthwith charge the jury." Harris argues that the trial court's delay in charging the jury after closing arguments concluded violated this provision. Specifically, Harris argues that the closing arguments concluded on Tuesday, April 9, 2024, at approximately 2:43 p.m., but that the jury did not return to court to receive final instructions until Thursday, April 11, 2024.

**{¶24}** As Harris asserts, closing arguments in this case concluded on the afternoon of April 9, 2024. After closing arguments, the trial court made the following statements to the jury:

> Okay. So we are now done with everything that is going to be given to you to consider. We do have some jury instructions to read, and so we can come back tomorrow morning early again or we can come back on Thursday.
>
> If we come in tomorrow it will need to be, again, by 8:15, because I have my docket, and I have 30 some cases that are already scheduled. I would do those after I read the jury instructions which should take me no more than half an hour to read.

9

And then you—while I do my docket you all could deliberate. And if you come to a verdict then I would stop the docket. If not, you would just go on the whole day until you have either reached a verdict or you will decide when to come back.

Tomorrow I will—if there is not a verdict by 11, we would not come back until like 2:00. But I'm willing to come back, but I just want everyone to be clear kind of on that timeline. So I will leave it up to you. I'll be here. But I don't know if you all want to come in early again tomorrow or if you would prefer Thursday and come in at like 10:00.

The jury elected to return to court for instructions on Thursday, April 11, 2024, and thus approximately a day and a half passed between the conclusion of closing arguments and the instructions being provided to the jury. And based on the trial court's comments, it appears that the court conducted its regular docket on the intervening day.

**{¶25}** Harris concedes that he failed to object below to the trial court's delay in charging the jury and that we are limited to reviewing the trial court's actions for plain error. *See State v. Flantoill*, 2024-Ohio-5224, ¶ 11 (1st Dist.). "An alleged error does not rise to the level of plain error unless, but for the error, the outcome of the trial would have been otherwise." *State v. Truesdell*, 2024-Ohio-5376, ¶ 29 (1st Dist.).

**{¶26}** Harris argues that he was prejudiced by the trial court's violation of R.C. 2945.10 because the trial court failed to admonish the jury not to form an opinion on the case before releasing it for the day after closing arguments. Harris's argument is belied by the record, which demonstrates that the trial court did, in fact, provide an admonishment to the jury. After the jurors elected to return on Thursday, April 11, the State asked the court to let the jurors know that they could not discuss the case until

they were charged. The trial court then told the jury, "So even though you have heard all of the testimony, until you hear the instructions about how you are going to go about deliberating about that testimony you should not talk about the case amongst each other or with anyone else or discuss anything. The same thing with the attorneys."[3]

**{¶27}** The record contains no indication that the jury did not follow this admonishment, the provision of which negates Harris's argument that he suffered prejudice. *See State v. Bowling*, 1999 Ohio App. LEXIS 5521, *19-20 (12th Dist. Nov. 22, 1999) ("In determining whether the defendant suffered a material prejudice from a delay in charging the jury, whether the trial court admonished the jury to separate and to not form an opinion until after the case is submitted to the jury will carry great weight.").

**{¶28}** Harris further argues that the jury's request during deliberations to see the CAD report demonstrates that "[d]uring the delay, the jury assumed the report would be available and presumably had greater difficulty remembering" the testimony offered regarding the CAD report. He contends that he was prejudiced by the jury's failure to verify a fact favorable to the defense. But this argument is nothing more than speculation. A request for the report does not mean that the jury was unable to recall related testimony, particularly where there is no affirmative evidence in the record demonstrating that the report was requested due to a collective lack of memory on the part of the jury.

---

[3] We recognize that this admonishment was not complete. R.C. 2945.34 provides that if the jury separates during trial, the court shall admonish it "not to converse with, nor permit themselves to be addressed by any person, nor to listen to any conversation on the subject of the trial, nor form or express any opinion thereon, until the case is finally submitted to them." *See State v. Helm*, 2016-Ohio-500, ¶ 24-25 (1st Dist.) (discussing R.C. 2945.34 and explaining that although the trial court failed to give the complete admonishment set forth in that statute to the jury, the record contained no evidence of jury misconduct).

**{¶29}** We hold that Harris failed to establish that the outcome of the proceedings would have been different but for the trial court's delay in charging the jury. The second assignment of error is overruled.

## IV. Trial Court's Communication with Jury

**{¶30}** In his third assignment of error, Harris argues that the trial court erred by communicating with the jury outside of his presence. His argument concerns the question asked by the jury during deliberations about the CAD report.

**{¶31}** The record, specifically the transcript of the proceedings provided for our review, establishes that after the jury left the courtroom to begin deliberations, the trial court instructed counsel to make sure that courtroom personnel had counsel's cell phone numbers and asked them to "stay within ten minutes of coming back in case [the jury has] any questions or a verdict." A recess was then taken. The next statement in the transcript is the trial court's explanation that "[t]he jury came and asked for something that we don't have. They asked for the CAD report. It's not in evidence, so I just said it's not in evidence, we don't have it, so that's it."

**{¶32}** Harris argues that the trial court not only answered the jury's question outside of his presence, but also provided the summary of its communication with the jury on the record outside of his presence. He contends that this was in violation of his right to be present at all stages of the proceedings.

**{¶33}** The law is clear that a criminal defendant has the right to be present at every stage of the trial. *State v. Kelley*, 2014-Ohio-5565, ¶ 22 (1st Dist.). "As a general rule, any communication with the jury outside the presence of the defendant or parties to a case by either the judge or court personnel is error which may warrant the ordering of a new trial." *State v. Schiebel*, 55 Ohio St.3d 71, 84 (1990); *accord Kelley* at ¶ 22. An ex parte communication between the court and the jury does not "create a conclusive

presumption of prejudice." *Schiebel* at 84. Rather, "[t]he communication must have been of a substantive nature and in some way prejudicial to the party complaining." *Id.* A communication will be considered substantive where it "'address[es] any legal issues, any fact in controversy, any law applicable to the case, or some similar matter.'" (Bracketed text in original.) *Kelley* at ¶ 22, quoting *State v. DiPietro*, 2009-Ohio-5854, ¶ 17 (10th Dist.).

**{¶34}** Following our review of the record, we are constrained to find Harris's argument to be without merit because the record does not affirmatively demonstrate that he was not present for the trial court's communication with the jury. We can definitively ascertain from the record that, off the record, the jury requested the CAD report and the trial court informed the jury that the report was not in evidence. But the record does not reflect who was present in court when this exchange occurred. Harris may not have been present when the trial court answered the jury's question. But, alternatively, Harris may have been present and the exchange simply was not recorded.

**{¶35}** Because the record does not establish the error of which Harris complains, we overrule the third assignment of error. The judgments of the trial court are accordingly affirmed.

Judgments affirmed.

**KINSLEY, P.J.,** and **BOCK, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.